## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NATALIE HENSHILWOOD, SHAWN JONES, and PRIME TITLE AGENCY, INC., | § § § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § § | CIVIL ACTION NO: 4:25-cv-01926 |
| | § | |
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION, | § § | |
| | § | |
| | § | |
| *Defendant*. | § | |

---

### DEFENDANT JPMORGAN CHASE BANK, N.A.'S
### MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

---

Respectfully submitted,

  */s/ Jennifer Tomsen*
Jennifer Tomsen
Texas Bar No. 24064535
tomsenj@gtlaw.com
Stephen Edmundson
Texas Bar No. 00796507
edmundsons@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: 713.374.3500
Facsimile: 713.374.3505

**ATTORNEYS FOR DEFENDANT,
JPMORGAN CHASE BANK, N.A.**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

NATURE AND STAGE OF THE PROCEEDINGS ........................................... vii

ISSUES TO BE RULED UPON ........................................................................ vii

LEGAL STANDARD GOVERNING DISMISSAL ......................................... viii

SUMMARY OF THE ARGUMENT .................................................................. ix

I.      SUMMARY OF PLAINTIFFS' ALLEGATIONS ................................... 1

II.     KEY CONTRACTUAL PROVISIONS ................................................... 2

III.    ARGUMENT ............................................................................................. 4

    A.    Plaintiffs' Breach of Contract Claim Is Inadequately Pled and
          Negated by the Account Agreements. ............................................. 4

        1.    Plaintiffs fail to identify specific contractual provisions or
              allege facts that support their claims. ................................... 4
        2.    The applicable contracts negate Plaintiffs' allegations. ...... 5

    B.    Plaintiffs' Claims Implicate Duties to Dash, But Plaintiffs Have Not
          Sued As or For Dash, Nor Have They Been Injured By Return of
          Funds to Dash. ................................................................................. 7

    C.    Plaintiffs Do Not Sufficiently Plead Violations of the Electronic
          Funds Transfer Act (EFTA). .......................................................... 8

    D.    Plaintiffs' Negligence and Gross Negligence Claims Must Be
          Dismissed Because of the Economic Loss Rule, Lack of Proximate
          Cause, and Failure to Otherwise Plead a Plausible Right to Relief. ........... 10

        1.    Plaintiffs' negligence and gross negligence claims are barred
              by the economic loss rule. .................................................. 10
        2.    Plaintiffs cannot plausibly plead proximate cause because
              Corona's actions caused their alleged harm. ..................... 11
        3.    Plaintiffs do not sufficiently plead gross negligence arising
              from these standard banking transactions and acts. ......... 12

    E.    Plaintiffs Do Not Plead A Viable Conversion Claim, and Such Claim
          Is Barred By the Economic Loss Rule. ........................................ 13

        1.    Plaintiffs do not plead a viable conversion claim. ............ 13

  2. Plaintiffs' conversion claim is barred by the economic loss rule. ................................................................................... 14

F. Plaintiffs' DTPA Claim Is Not Adequately Pled and Is Also Barred By the Economic Loss Rule. ........................................................ 14

  1. Plaintiffs' DTPA claim is not pled with particularity under Rule 9(b). ................................................................................. 15

  2. Plaintiffs are not DTPA "consumers" with regard to disputed credit card transactions. ................................................... 16

  3. Plaintiffs' DTPA claim is merely a claim for breach of contract. ............................................................................... 16

  4. Plaintiffs' DTPA claim is precluded by the economic loss rule. ..................................................................................... 17

G. Plaintiffs Do Not Plead A Plausible Right to Recover Under UCC Article 4A. ................................................................................... 18

H. Plaintiffs Do Not Adequately Plead A Right to Mental Anguish Damages. ..................................................................................... 19

I. Plaintiffs' Second Amended Complaint Remains Confusing and Insufficiently Pled. ...................................................................... 20

J. Alternatively, the Court Should Abate This Lawsuit While Plaintiffs Litigate Their State Court Lawsuit Concerning Ownership of Dash. ......... 20

IV. CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 2

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*,
129 F. Supp. 3d 440 (N.D. Tex. 2015) ....................................................... 17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 2

*Carson v. Dynegy, Inc.*,
344 F.3d 446 (5th Cir. 2003) ..................................................................... 13

*Cisneros v. Christiana*,
No. 7:17-CV-00160, 2017 U.S. Dist. LEXIS 235967 (S.D. Tex. 2017) ...................... 4

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ................................................................. 3, 2

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020) ................................................................... 15

*Cushman v. GC Servs., LP*,
657 F. Supp. 2d 834 (S.D. Tex. 2009), *aff'd sub nom. Cushman v. GC Servs., L.P.*, 397 F. App'x. 24 (5th Cir. 2010) ............................................. 16

*In re Ditech Holding Corp.*,
2024 WL 3249957 (2024) ............................................................................ 6

*Dorsey v. U.S. Bank Nat'l Assn*,
2012 WL 13001917 (M.D. La. April 2, 2012) ....................................... 8, 10

*Helms v. Southwestern Bell Tel. Co.*,
794 F.2d 188 (5th Cir. 1986) ..................................................................... 17

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
302 F.3d 552 (5th Cir. 2002) ..................................................................... 15

*Hoare v. Flagstar Bank, FSB*,
No. 3:16-CV-1387-G (BF), 2016 WL 4191908 (N.D. Tex. Aug. 9, 2016) ........................................................................................................ 15

*Hugh Symons Grp., plc v. Motorola, Inc.*,
292 F.3d 466 (5th Cir. 2016) ..................................................................... 14

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
453 B.R. 645 (N.D. Tex. 2011) ................................................................... 2

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
    453 B.R. 645, 2011 U.S. Dist. LEXIS 45758 (N.D. Tex. 2011) .................................. 3

*Landis v. North American Co.*,
    299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ....................................................... 21

*Morse v. Commonwealth Land Title Ins. Co.*,
    Case No. 4:12CV375, 2013 WL 5372395 (E.D. Tex. Sept. 25, 2013) ......................... 4

*Mullins v. TestAmerica, Inc.*,
    564 F.3d 386 (5th Cir. 2009) ...................................................................................... 4

*Nazimuddin v. Wells Fargo Bank, N.A.*,
    No. 24-20343, 2025 WL 33471 (5th Cir. Jan. 6, 2025) ............................................... 9

*Newhouse v. JPMorgan Chase Bank, N.A.*,
    No. 4:18-CV-0836, 2018 U.S. Dist. LEXIS 206417 (S.D. Tex. 2018) ......................... 4

*Salek v. Suntrust Mortg., Inc.*,
    No. 4:18-cv-1664 (S.D. Tex. Aug. 8, 2018) ............................................................... 17

*Sanchez v. Bank of S. Tex.*,
    494 F. Supp. 3d 421 (S.D. Tex. 2020) ...................................................................... 14

*Shakeri v. ADT Sec. Servs., Inc.*,
    816 F.3d 283 (5th Cir. 2016) .................................................................................... 17

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................................... 15

*Spain v. Union Trust*,
    674 F. Supp. 1496 (D. Conn. 1987) ............................................................................ 9

*Xtreme Power Plan Tr. v. Schindler (In re Xtreme Power Inc.)*,
    563 B.R. 614 (Bankr. W.D. Tex. 2016) ................................................................. 3, 2

**State Cases**

*Allways Auto Grp., Ltd. v. Walters*,
    530 S.W.3d 147 (Tex. 2017) ..................................................................................... 12

*Amoco Prod. Co. v. Alexander*,
    622 S.W.2d 563 (Tex. 1981) ..................................................................................... 11

*Autohaus, Inc. v. Aguilar*,
    794 S.W.2d 459 (Tex. App.—Dallas 1990) .............................................................. 16

*Bennett v. Grant*,
    525 S.W.3d 642 (Tex. 2017) ..................................................................................... 19

*Canfield v. Bank One*,
    51 S.W.3d 828 (Tex. App.—Texarkana 2001, pet. denied) ................................. 16, 17

*CAS Ltd. v. TM Aviation Partners, L.P.*,
   No. 05-15-00779-CV, 2016 WL 4151455 (Tex. App.—Dallas, Aug. 4,
   2016) ...................................................................................................... 16

*City of Tyler v. Likes*,
   962 S.W.2d 489 (Tex. 1997) ................................................................... 19

*City Prods. Corp. v. Berman*,
   610 S.W.2d 446 (Tex. 1980) ................................................................... 11

*Crawford v. Ace Sign, Inc.*,
   917 S.W.2d 12 (Tex. 1996) ..................................................................... 17

*Delgado v. Methodist Hosp.*,
   936 S.W.2d 479 (Tex. App.—Houston [14th Dist.] 1996, no writ) ............ 19

*El T. Mexican Rests., Inc. v. Bacon*,
   921 S.W.2d 247 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ......... 8

*Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*,
   192 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ............ 14

*Hallmark v. Hand*,
   885 S.W.2d 471 (Tex. App.—El Paso 1994, writ denied) ......................... 19

*Jim Walters Homes, Inc.*,
   711 S.W.2d 617 (Tex. 1986) ................................................................... 10

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
   242 S.W.3d 1 (Tex. 2007) ....................................................................... 11

*Medina v. Zuniga*,
   593 S.W.3d 238 (Tex. 2019) ................................................................... 13

*Moody Nat. Bank v. Texas City Dev., Co.*,
   46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) .......... 18

*Parkway Co. v. Woodruff*,
   901 S.W.2d 434 (Tex. 1995) ................................................................... 19

*Rodriguez-Escobar v. Goss*,
   392 S.W.3d 109 (Tex. 2013) ................................................................... 11

*Stephens v. Three Finger Black Shale P'ship*,
   580 S.W.3d 687 (Tex. App.—Eastland 2019, pet. denied) ......................... 8

*Sterling Chems. Inc.*,
   259 S.W.3d 793 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) .......... 10

*In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*,
   No. 4:08-MD-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd
   sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) .... 9

*W. Investments, Inc. v. Urena*,
    162 S.W.3d 547 (Tex. 2005)..................................................................... 12

*Waisath v. Lack's Stores*,
    474 S.W.2d 444 (Tex. 1971)..................................................................... 13

**Federal Statutes**

15 U.S.C. § 1693 ............................................................................................. 10

15 U.S.C. § 1693(b) .......................................................................................... 8

15 U.S.C. § 1693a(2) ........................................................................................ 9

15 U.S.C. § 1693a(7)(D) ................................................................................... 9

15 U.S.C. § 1693a(12) ...................................................................................... 8

15 U.S.C. § 1693f ............................................................................................. 9

**State Statutes**

TEX. BUS. & COMM. CODE § 17.44(a) .............................................................. 15

**Rules**

FED. R. CIV. P. 8(a)(2) ...................................................................................... 2

FED. R. CIV. P. 9(b) ...................................................................................... 1, 15

FED. R. CIV. P. 12(b)(6) .............................................................................. 1, 2, 3

**Regulations**

12 C.F.R. § 205.3(c)(3) ..................................................................................... 9

12 C.F.R. § 205.6(b)(3) ..................................................................................... 9

**Other Authorities**

2A *Moore's Federal Practice* ¶ 8.13 (2d ed. 1991).......................................... 2

## NATURE AND STAGE OF THE PROCEEDINGS

***Lawsuit Filed; Removed to This Court.*** Plaintiffs filed this lawsuit against Defendant JPMorgan Chase Bank, N.A. ("Chase")[1] in Texas state court, alleging various causes of action related to banking transactions. Chase removed the matter to this Court on April 28, 2025, before answering [Dkt. 1].

***Plaintiffs Have Re-Pleaded Twice.*** On August 8, 2025, Magistrate Judge Bennett instructed Plaintiffs to re-plead [Dkt. 21]. Plaintiffs did so [Dkt. 22]. After Plaintiffs and Chase conferred, Plaintiffs agreed to re-plead again to address incorrect allegations. [Dkt. 23 at ¶ 9]. On August 29, 2025, Plaintiffs filed their Second Amended Complaint (the "Complaint") [Dkt. 25]. Chase submitted a second pre-motion letter seeking leave to file a motion to dismiss Plaintiffs' claims [Dkt. 26]. The Court granted leave [Dkt. 30], and, pursuant to a short, agreed extension of deadlines [Dkt. 34], Chase now so moves.

## ISSUES TO BE RULED UPON

Chase asks the Court to rule on the following issues:

1.      Whether Plaintiffs have adequately pleaded each of their claims under Rule 12(b)(6) and, for their Texas Deceptive Trade Practices Act ("DTPA") claim, whether they have also met the particularized pleading requirements under Rule 9(b)?

2.      Do Plaintiffs have standing/capacity to bring claims that implicate alleged duties owed to Dash, and alleged injuries to Dash?

3.      Does the economic loss rule preclude certain non-contract claims?

---

[1] JP Morgan Chase & Co. was originally a co-defendant but has not been named a party in Plaintiffs' current complaint.

4.      In the event the Court determines dismissal is not warranted, should the Court abate this matter while Plaintiffs and their former business partner litigate their separate and ongoing state court lawsuit concerning Dash's ownership, which implicates all or nearly all of the challenged transactions in this lawsuit?

## LEGAL STANDARD GOVERNING DISMISSAL

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide the "grounds" of its "entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff must include allegations that "plausibly suggest that the plaintiff has a right to relief," and if plaintiff does not do so, "the plaintiff pleads itself out of court." *Twombly*, 550 U.S. at 555.

Each claim must contain the requisite factual information for that asserted claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are never sufficient. *Id.* A complaint must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See, e.g.*, 2A *Moore's Federal Practice* ¶ 8.13, at 8–73 (2d ed. 1991*)*; *see also* FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief."); *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). While the court on a motion to dismiss accepts a plaintiff's well-pleaded factual allegations as true, "[t]his deference is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

When considering a 12(b)(6) motion to dismiss, the Court may consider extrinsic documentary evidence as part of the pleadings if the document is (1) attached to defendant's motion; (2) referred to in plaintiff's complaint; and (3) "central" to one of plaintiff's claims. *Xtreme Power Plan Tr. v. Schindler (In re Xtreme Power Inc.)*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016). When, as here, a claim is based on the terms of a contract, the documents constituting the contract are central to the claim. *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662, 2011 U.S. Dist. LEXIS 45758 (N.D. Tex. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).

## SUMMARY OF THE ARGUMENT

Plaintiffs seek to hold Chase responsible for the fallout from a bitter dispute between themselves and their former business partner, Veronica Corona, stemming from a business sale transaction of Dash Title Corp ("Dash"). Even after ***signing a corporate resolution*** stating that Corona was Dash's new President and Sole Owner, Plaintiffs continued to transfer funds from Dash accounts ***to their own personal accounts***. Now Plaintiffs claim Chase harmed them by reversing those transactions.

Plaintiffs do not state claims upon which relief could be granted. The Court can and should review the documents central to Plaintiffs' claims. Plaintiffs did not provide them to the Court, but Chase does here. Regardless of who owned Dash, the documents governing the accounts gave Chase the authority to do what it did. Chase could accept instruction from any Authorized Signer, and it is undisputed that Corona was one at all relevant times. Moreover, Chase had the right to rely on the corporate resolution (signed by Plaintiff) and follow Corona's subsequent instruction—acting alone—to remove

Plaintiffs as Authorized Persons on Dash's accounts.  After that, Chase had the right to reverse Plaintiffs' subsequent, unauthorized transactions.  When the Court reviews the documents central to Plaintiffs' claims, it will see that Plaintiffs cannot plausibly recover.  Also, although Plaintiffs plead their claims as various causes of action, each one falls back to the same central documents and is barred for the same reasons.

As further basis for dismissal, Plaintiffs' allegations fail to meet basic Federal pleadings standards for their various cause of action.  Finally, Plaintiffs ***now*** claim that they still own Dash.  If that is true, they cannot plausibly recover because they cannot possibly have been damaged by Chase returning the funds to Dash.

## I.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs Henshilwood and Jones maintained personal bank accounts with Chase. Complaint ¶¶ 2-3, 13.  Plaintiffs allege that they co-founded Dash, and, at all relevant times, were authorized signers on Dash's Chase accounts.[2]  *Id*. ¶¶ 2-3.  In February 2023, Dash designated Henshilwood, Jones, **and Corona** as persons authorized to transact business on Dash's accounts.  *Id*. ¶¶ 10 (emphasis added).

Plaintiffs contend that, in mid-August 2024, Corona presented one or more corporate resolutions to Chase, claiming to be Dash's sole owner after sale of the company. *Id*. ¶ 20.  However, Plaintiffs contend that necessary steps under Dash's corporate bylaws and Texas law were never completed to effect a transfer of ownership.  *Id.* ¶¶ 17-24. Plaintiffs allege that Henshilwood therefore remains an owner of Dash and that Chase should not have followed Corona's instructions.  *Id.*  These instructions included removing Plaintiffs Henshilwood and Jones as authorized signers on Dash's accounts, without notice to them, and reversing funds withdrawals that Plaintiffs had initiated from Dash's accounts. *Id*. ¶¶ 32-37.

The complained-of transactions are:

- Reversal of a wire transfer from a Dash account to Henshilwood's personal account at another bank (*id*. ¶ 41);

- A withdrawal from Henshilwood's personal account (*id*. ¶ 42a, 43, and 44c);

- Multiple withdrawals from Henshilwood's personal account that Plaintiffs allege correspond to payments from Dash's operating account to Dash's credit

---

[2] Plaintiff Prime Title Agency ("Prime") is a business owned by Henshilwood, who was designated in Prime's account agreements as a person authorized on its accounts.  *Id*. ¶¶ 2, 4.  As with all other transactions at issue, the governing account agreements allowed Chase to reverse unauthorized funds transfers by subtracting the funds from Henshilwood's accounts or from other accounts, like Prime's, for which she was an owner.

card (*id*. ¶ 44 a.-d);

- Withdrawal from Henshilwood's personal account to reverse a credit that Chase advised Henshilwood she was not in fact owed (*id*. ¶ 42 b); and

- Closure of and withholding from Prime Title's account (*id*. ¶ 45)

Plaintiffs claim that all transactions they initiated from Dash's accounts were "legitimate," and that Chase took too long and/or failed to meaningfully investigate their complaints about these transaction reversals and chargebacks.  *Id*. ¶ 48.  Plaintiffs claim not only economic damages, but "mental anguish" based upon "severe emotional distress." In addition, they seek statutory damages and "exemplary damages arising from alleged "gross negligence demonstrating conscious indifference."  *Id*. ¶ 100.

## II.   <u>KEY CONTRACTUAL PROVISIONS</u>

Dash's and Plaintiffs' contractual agreements with Chase are documents that the Court can consider in determining this Motion.  On a 12(b)(6) motion to dismiss, the Court may consider extrinsic documentary evidence if the document is (1) attached to the motion; (2) referred to in plaintiff's complaint; and (3) "central" to one of plaintiff's claims.  *Xtreme Power Plan Tr. v. Schindler (In re Xtreme Power Inc.)*, 563 B.R. 614, 629 (Bankr. W.D. Tex. 2016).  When a claim is based on the terms of a contract, the documents constituting the contract are central to the claim.  *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645,662 (N.D. Tex. 2011); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) (district court properly considered contract to determine whether plaintiff stock option holders were beneficiaries of the contract).

The documents that comprise the contracts central to Plaintiffs' claims here and

referenced in the Complaint include:

- **Dash Business Depository Certificate** (**Ex. A**; Complaint ¶ 10);

- **Dash Business Signature Card** (**Ex. B**; Complaint ¶ 10);

- **Deposit Account Agreement** (**Ex. C**; Complaint ¶¶ 14, 60; and

- **Business Card Agreement** (**Ex. D**; "account agreements" are mentioned repeatedly in the Complaint).

In addition, Plaintiffs' Complaint references the mid-August 2024 corporate Resolution that Corona "apparently presented" to Chase which is central to Plaintiffs' claims regarding Chase's alleged reliance on improper documentation.  Complaint at ¶¶ 20, 23.  Thus, the Court may consider the Resolution, which is signed ***by Plaintiff Henshilwood*** and states that Corona's purchase offer for the shares of Dash was accepted; and that "it is further agreed that Veronica Corona is hereby the President and sole owners [*sic*] of Dash Title Corp."  (**Ex. E**).  The Court may also consider the Business Depository Certificate and Business Signature Card that Corona executed on August 15, 2025, removing Henshilwood and Jones as Authorized Persons for Dash.  (**Exs. F** and **G**; Complaint ¶¶ 28-30).

The Court may also take judicial notice of the existence of state court litigation involving the same parties and implicating the same transactions at issue here, for which Plaintiffs are seeking to hold Chase liable.  Dash sued Henshilwood and Jones, alleging that they sold their interest in Dash on August 14, 2024, and that Henshilwood subsequently stole from Dash by causing numerous checks, bank transfers, and other methods of payment to be sent to her personal bank accounts.  **Ex. H** at ¶¶ 1-3. Henshilwood and Jones have counterclaimed, alleging among other things, that Corona

committed fraud regarding the "purported" Dash sale. **Ex. I** at ¶ 17. **The banking**

**transactions at issue in that case overlap with the transactions complained of here.**

*Compare* **Ex. H** ¶ 2(a)-(f) to the Complaint, here [Dkt. 25], at ¶¶ 41-44.[3]

### III.   ARGUMENT

**A.   Plaintiffs' Breach of Contract Claim Is Inadequately Pled and Negated by the Account Agreements.**

   1.   Plaintiffs fail to identify specific contractual provisions or allege facts that support their claims.

To maintain a claim for breach of contract, Plaintiffs must identify the contract and

allege **which terms** were breached. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th

Cir. 2009); *Newhouse v. JPMorgan Chase Bank, N.A.*, No. 4:18-CV-0836, 2018 U.S. Dist.

LEXIS 206417, at *8 (S.D. Tex. 2018) (dismissing claim because plaintiff cannot not rely

on vague allegations but must plead specific provisions of the contract that were breached).

"Without identification of the... provisions breached... a breach of contract claim has not

been stated and should be dismissed." *Morse v. Commonwealth Land Title Ins. Co.*, Case

No. 4:12CV375, 2013 WL 5372395, at *11 (E.D. Tex. Sept. 25, 2013).  Plaintiff "bears

the burden of pointing out which specific contractual provision was breached." *Cisneros*

*v. Christiana*, No. 7:17-CV-00160, 2017 U.S. Dist. LEXIS 235967, at *3 (S.D. Tex. 2017).

Plaintiffs cite to only two specific Deposit Account Agreement provisions:  III.A.6

(regarding Chase's discretion to notify the accountholder regarding certain debit or credit

adjustments) and III.D.5 (regarding investigation of errors or questions about electronic

fund transfers).  Complaint ¶ 56.  They do not explain <u>how</u> either section was breached or

---

[3] Plaintiffs' current counsel Philip Racusin is Henshilwood and Jones's counsel in the State Court Matter.

what transactions these provisions relate to.  Plaintiffs do not cite *any* specific provision for their remaining contentions – e.g., that Chase "fail[ed] to properly verify Corona's claimed equity transfer…" (c), "failed to exercise ordinary care" (f), removed Plaintiffs as signers without notice (g), "failed to maintain the security and integrity of Plaintiffs' accounts" (h). Accordingly, Plaintiffs' breach of contract claim should be dismissed.

      2.    <u>The applicable contracts negate Plaintiffs' allegations.</u>

Plaintiffs ignore that sections III.A.4 and 5 of the Deposit Account Agreements expressly allow Chase to refuse deposits, reverse transactions, and make chargebacks when, among other things, the issuer (here, Dash) complains that a payment was unauthorized; nor do they mention that Chase's express authority includes subtracting funds "from the balance in your account <u>or in other accounts for which you are an owner,</u> or charge part of the item to each, even if you have already withdrawn the funds" (emphasis added).  The "other accounts" owned by Plaintiffs would include the Prime Title business account (Complaint ¶ 56(d)), regardless of whether Prime Title itself was involved in the transactions or conduct at issue.

The agreements permitted Chase, among other things, to:

- Rely upon instruction from authorized users/signers on the accounts (**Ex. C** at 7 and 22, **Ex. D** at 2);
- Close or restrict accounts (**Ex. C** at 7 and 21, **Ex. D** at 2 and 6);
- Decline, block, or delay transactions (**Ex. C** at 8 and 22, **Ex. D** at 2 and 6);
- Reverse transactions (**Ex. C** at 8, 15 and 22);
- Apply funds from any of Plaintiffs' other accounts as a setoff or collateral for account obligations (**Ex. C** at 8 and 20; **Ex. D** at 12); and
- Charge various fees (*see, e.g.*, **Ex. C** at 9-10 and 20; **Ex. D** at 1, 3, 8, 10, 11, 12, 14).

The account agreements also require that complaints be made <u>in writing</u> within

specific deadlines or the customers waive all rights (**Ex. C** at 13 and 18; **Ex. D** at 9), yet Plaintiffs have not alleged facts showing compliance with these specific conditions precedent. *See, e.g.*, *In re Ditech Holding Corp.*, 2024 WL 3349957, *6 (dismissing plaintiff's contract and TILA claims, where plaintiff claimed mortgage servicer had failed to properly credit her payments, but did not allege facts showing she performed her own obligations).[4]

As for Plaintiffs' linchpin allegations—that Chase needed to do more to verify the accuracy of the corporate Resolution and that Chase needed to notify Plaintiffs that they had been removed as Authorized Persons—Plaintiffs likewise do not cite any specific agreement or provision that Chase breached. Again, these allegations are negated by the contracts, which provide that Chase "may rely on the accuracy and completeness of **all resolutions,** signature cards and other documents you deliver to us in connection with the account." Deposit Account Agreement Section II.B., **Ex. C** at 7 (emphasis added). Chase was therefore authorized to rely on the corporate resolution—signed by Corona ***and Henshilwood***—confirming that Corona had become President and sole owner of Dash on August 14, 2024. Moreover, the Business Depository Certificates—both the February 2023 version signed by Plaintiffs, and the August 15, 2024 version signed by Corona, expressly stated that the President [Corona], ***acting alone***, could remove the other authorized persons. Corona did so, and Chase was contractually entitled to rely on this express authorization. **Exs. F** and **G**. Plaintiffs have not identified any basis for their

---

[4] Plaintiffs' pleading is not only unclear but also contradictory. *See, e.g.*, ¶ 43 (pleading both that Chase made "unilateral" withdrawals and that these same withdrawals were due to Chase acting upon Corona's representations and/or instructions).

argument that Chase was required to notify them of their removal.

Further, Plaintiffs' repeated claims that the transactions at issue were "unauthorized" are belied by the contracts—*signed by Plaintiffs*—acknowledging Corona as an authorized signer on the Dash account in 2023, long before the disputed transactions occurred. The Depository Certificate (**Ex. A**) and Signature Card (**Ex. B**) for the Dash account include Corona as one of the signers who, per the terms of the Depository Certificate, may *alone act for Dash in "any" matter* involving Dash's Chase accounts. Importantly, although Plaintiffs plead that the sale of Dash to Corona was never completed, they do *not* plead that Corona was ever removed as an authorized signer on the Dash account. Section IX.B. of the Deposit Account Agreement provides that Chase "will not be liable for anything we do when following your instructions." **Ex. C** at 22.

Plaintiffs' breach of contract claim should be dismissed not only because Plaintiffs fail to specify contract provisions and conduct to plead a viable claim, but also because the attached contracts and central documents negate Plaintiffs' allegations.

**B.    Plaintiffs' Claims Implicate Duties to Dash, But Plaintiffs Have Not Sued As or For Dash, Nor Have They Been Injured By Return of Funds to Dash.**

Although Plaintiff Henshilwood still claims an ownership interest in Dash, Dash is not a party to this suit, nor have Plaintiffs alleged standing to sue for injuries to Dash. Yet the disputed transactions were initiated by Plaintiffs *from Dash's accounts,* and the essence of their claims is that they remained authorized to act for Dash even after Corona removed them as signers on Dash's accounts.

The alleged duties Plaintiffs claim Chase breached—*e.g.*, to do more to verify the

accuracy of the corporate Resolution before following Corona's instructions, and to notify them when Corona removed them as Authorized Persons from Dash's accounts – relate <u>to Dash</u>, not to Plaintiffs individually.  While Chase does not agree that it had any such duty, the claims if any would belong to Dash, not to Plaintiffs.  Accordingly, Plaintiffs cannot recover for alleged damages based upon these or other alleged duties owed to Dash.  *See, e.g., Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687 (Tex. App.—Eastland 2019, pet. denied) (purported trustee of LLC did not have standing to assert LLC's fraud and breach claims individually where LLC was not a party to the suit and suit was not brought as a derivative one on company's behalf); *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (finding that because Plaintiff "did not allege that he was suing in a representative capacity on behalf of the corporation for the corporate cause of action, ... [his] cause of action must fail").

## C.    Plaintiffs Do Not Sufficiently Plead Violations of the Electronic Funds Transfer Act (EFTA).

The EFTA establishes the "rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."  15 U.S.C. § 1693(b); *Dorsey v. U.S. Bank Nat'l Assn*, 2012 WL 13001917, *2 (M.D. La. April 2, 2012).  An unauthorized funds transfer under the EFTA is a transfer "from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer **and from which the consumer receives no benefit."**  15 U.S.C. § 1693a(12) (emphasis added).  The EFTA expressly <u>excludes</u> from its definition of electronic fund transfer "any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a

consumer and a financial institution <u>for the purpose of covering an overdraft or maintaining</u> <u>an agreed upon minimum balance in the consumer's demand deposit account</u>."  15 U.S.C. § 1693a(7)(D) (emphasis added).[5]  The EFTA further provides that a consumer "must report an unauthorized electronic fund transfer that appears on a periodic statement within 60 days of the financial institution's transmittal of the statement…."  12 C.F.R. § 205.6(b)(3).  Timely notice triggers the bank's duty to investigate the claim and determine whether an error occurred.  15 U.S.C. § 1693f.

Plaintiffs do not specifically identify the subject transactions, instead referring generally to "debits from Plaintiffs' consumer accounts described above."  Complaint ¶¶ 59-62.  It appears that the funds transfers at issue here include funds relating to credit card purchases, debited against a business account (Dash), with funds subsequently taken back from Plaintiffs' personal accounts.  Even if the EFTA did apply to any of the disputed transactions, which is in doubt because of Plaintiffs' failure to specify which of the challenged transactions they believe violate EFTA, Plaintiffs do not plead sufficient facts to establish that anything about the transfers was wrongful.  They do not plead who made the credit card purchases on behalf of Dash, who instructed the transfers, or where the withdrawn funds were ultimately applied, a crucial fact to determining whether the

---

[5] EFTA does not apply if the funds transfer in question was <u>not</u> fully electronic.  *Spain v. Union Trust*, 674 F. Supp. 1496, 1500 (D. Conn. 1987) ( "[t]he presence of human contact takes this transaction out of the scope of the Act").  EFTA also does not apply to business accounts or wire transfers.  *Nazimuddin v. Wells Fargo Bank, N.A.*, No. 24-20343, 2025 WL 33471, at *2 (5th Cir. Jan. 6, 2025) ("[t]he term electronic fund transfer does not include ... [a]ny transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses"; rejecting claims regarding wire transfers, as outside of the EFTA's scope)(citing 12 C.F.R. § 205.3(c)(3)).  Also, the EFTA also does not apply to credit card transactions.  15 U.S.C. § 1693a(2); *In re Vistaprint Corp Mktg. & Sales Pracs. Litig.*, No. 4:08-MD-1994, 2009 WL 2884727, at *8 (S.D. Tex. Aug. 31, 2009) (dismissing EFTA claim because "[c]harges to a credit card… do not involve transfers from a consumer's bank account"), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010).

exception under EFTA for funds automatically withdrawn to cover overdrafts or maintain a minimum balance applies.  Critically also, Plaintiffs do not plead that they did not benefit from the transactions.  To the contrary, because Plaintiffs represent that Henshilwood still owns Dash, Plaintiffs cannot plead that they were not benefited by having funds applied back to Dash.

Finally, Plaintiffs do not plead when they gave notice to Chase as to <u>each</u> allegedly unauthorized transaction.  *See, e.g.*, *Dorsey*, 2012 WL 13001917, *3 (dismissing EFTA claim because "[t]he date of Plaintiff's notification is essential to prove that U.S. Bank had an obligation to follow the error-resolution procedure under 15 U.S.C. § 1693 and that the Bank violated its responsibilities under this provision").  Plaintiffs merely plead "dates including approximately September 27-29, 2024" (Complaint ¶ 60a), but this is insufficient to establish when notice was given.  Indeed, this supposed notice date **pre-dates all but two of the reversals –** meaning that notice on the dates pled cannot possibly have triggered any duty to investigate as to the remaining transactions.  Accordingly, Plaintiffs' EFTA claim must be dismissed.

**D.   Plaintiffs' Negligence and Gross Negligence Claims Must Be Dismissed Because of the Economic Loss Rule, Lack of Proximate Cause, and Failure to Otherwise Plead a Plausible Right to Relief.**

1.   <u>Plaintiffs' negligence and gross negligence claims are barred by the economic loss rule.</u>

The economic loss rule bars tort claims when a contract forms the basis of a claim. *Jim Walters Homes, Inc.*, 711 S.W.2d 617 618 (Tex. 1986); *Sterling Chems. Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[I]f a plaintiff only

seeks to recover for the loss or damage to the subject matter of a contract he cannot maintain a tort action against a defendant"). The rule focuses on whether the injury "is to the subject of the contract itself" and "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).

Plaintiffs' claims center on funds transaction reversals and chargebacks, which implicate rights, duties, and obligations arising out of their account relationships with Chase. Plaintiffs do not sufficiently allege breach of any duties outside the contracts. Accordingly, the negligence and gross negligence claims should be dismissed under the economic loss rule.[6]

### 2. Plaintiffs cannot plausibly plead proximate cause because Corona's actions caused their alleged harm.

Plaintiffs fail to adequately allege that any purported breach of duty by Chase proximately caused their damages. To state a claim for negligence, Plaintiffs must establish that: (1) Chase owed a duty to them; (2) Chase breached that duty; and (3) the breach **proximately caused** Plaintiffs' damages. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013). Proximate cause has two elements, cause in fact and foreseeability, and "cause in fact" is only established when an act or omission was a substantial factor in

---

[6] Plaintiffs seek exemplary damages through their gross negligence claim, but exemplary damages are not allowed for breach of contract. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). Even if the breach is malicious, intentional or capricious, exemplary damages may not be recovered unless a distinct tort is alleged and proved. *City Prods. Corp. v. Berman*, 610 S.W.2d 446, 450 (Tex. 1980). As Plaintiffs' gross negligence claim is really a claim sounding in contract, exemplary damages are unavailable.

causing the injury, without which the harm would not have occurred. *W. Investments, Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Where the defendant's negligence did no more than furnish the condition that made the injury possible, proximate cause cannot be established. *Allways Auto Grp., Ltd. v. Walters*, 530 S.W.3d 147, 149 (Tex. 2017). Here, even if Chase was somehow negligent (it was not), Plaintiffs' alleged harm was **proximately caused by Corona**, not by Chase.

Plaintiffs plead that Corona did not acquire full ownership of Dash but represented to Chase that she "was the sole owner" and presented documentation, including the Resolution, to Chase in connection with this claim. *See, e.g.*, Complaint ¶¶ 1, 20-23. Plaintiffs plead that all the disputed transactions were "[b]ased solely on Corona's claims." *Id.* ¶ 40; fn. 1. *If* Corona acted unlawfully, it was her actions that were the substantial factor in causing Plaintiffs' injuries. Chase had an express right to rely on the accuracy of the Resolution, **Ex. C** at 7 (II.B); Chase cannot be liable for following Dash's instructions, *id.* at 22 (IX.B); and the account agreements permit the President [Corona], acting alone, to remove other authorized signers. **Exs. A** and **E**. Plaintiffs cannot recover on a claim that Chase proximately caused their damages by following the instructions of an apparent owner who at all times was an Authorized Signer on the disputed accounts.

   3.   <u>Plaintiffs do not sufficiently plead gross negligence arising from these standard banking transactions and acts.</u>

Plaintiffs fail to plead specific facts that would support conduct rising to the level of "gross" negligence. Instead, they reference the same conduct complained of for their breach of contract and ordinary negligence claims and merely assert – without any factual

support – that these actions involved an "extreme degree of risk" and that Chase had "actual, subjective awareness" of these risks but proceeded with "conscious indifference to the rights, safety, or welfare of others." Complaint ¶¶ 67-68. The alleged actions involving an "extreme degree of risk" and the "evidence" supposedly showing Chase's actual awareness are merely standard banking transactions, acts, and standards. This is not enough to plead an ordinary negligence claim into a claim of gross negligence. *See, e.g.*, *Medina v. Zuniga*, 593 S.W.3d 238, 241 (Tex. 2019) ("The objective gross-negligence standard must remain functionally distinguishable from ordinary negligence.… [A]n extreme degree of risk is a threshold significantly higher than the objective 'reasonable person' test for negligence.… An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent") (internal quotations omitted). Accordingly, Plaintiffs' negligence and gross negligence claims must be dismissed.

**E.  Plaintiffs Do Not Plead A Viable Conversion Claim, and Such Claim Is Barred By the Economic Loss Rule.**

1.  <u>Plaintiffs do not plead a viable conversion claim.</u>

Under Texas law, conversion is "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (quoting *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)). Because Corona was an Authorized Signer on the Dash account, any instructions by Corona regarding withdrawals or transfers were lawful and authorized. Moreover, because the accounts at issue were governed by account agreements that authorized Chase to take the

very actions about which Plaintiffs complain, Plaintiffs cannot state a viable claim for conversion.

Further, to maintain this cause of action, Plaintiffs are required to show that *Chase* "converted" and is wrongfully holding their funds, but their pleading indicates that the disputed funds were credited to Dash, in which Plaintiff Henshilwood alleges she has a significant ownership interest. *See* Complaint ¶¶ 41-43. Accordingly, Chase is not holding and benefitting from the disputed funds. Further, there is no conversion where an indebtedness may be discharged generally by the payment of money. *Sanchez v. Bank of S. Tex.*, 494 F. Supp. 3d 421, 439 (S.D. Tex. 2020).

2.   Plaintiffs' conversion claim is barred by the economic loss rule.

Where a conversion claim relates to the subject of a contract and involves contractual duties, the economic loss rule bars the claim. *See, e.g.*, *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that conversion claim related to the subject of the contract and involved duties detailed in the contract, and thus the claim sounded only in contract). As discussed above, Plaintiffs' claims sound in contract, and therefore their conversion claim is barred by the economic loss rule.

**F.   Plaintiffs' DTPA Claim Is Not Adequately Pled and Is Also Barred By the Economic Loss Rule.**

The elements of a Deceptive Trade Practices Act claim are (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damage. *Hugh Symons Grp., plc v.*

*Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2016).  For *each* alleged type of transaction for which they claim damages, Plaintiffs must demonstrate that they are consumers who "seek[] or acquire[]... goods or services," which "form the basis of the complaint."  TEX. BUS. & COMM. CODE § 17.44(a); *Hoare v. Flagstar Bank, FSB*, No. 3:16-CV-1387-G (BF), 2016 WL 4191908, at *2 (N.D. Tex. Aug. 9, 2016) (citation omitted).  Plaintiffs' DTPA claim must be dismissed because (1) a DTPA claim must be pled with particularity, and Plaintiffs do not meet this exacting standard; (2) Plaintiffs cannot establish that they are "consumers" with regard to any disputed credit card transactions, and (3) DTPA claims sounding in contract are barred by the economic loss rule.

### 1.    <u>Plaintiffs' DTPA claim is not pled with particularity under Rule 9(b).</u>

Plaintiffs must plead their DTPA claim with particularity under Rule 9(b).  *Curtis v. Cerner Corp.*, 621 B.R. 141, 167 (S.D. Tex. 2020); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).  The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to **specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.**"  *Id.* (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)) (emphasis added).  Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue."  *Id.* (citation omitted).

In Paragraphs 74 and 75 of their Complaint, Plaintiffs make a show of addressing the "who, what, when, where, and how," but these alleged misrepresentations are still too general to meet Rule 9(b)'s pleading standards.  Moreover, the alleged misrepresentations

15

that "Chase Private Client services included enhanced security and dedicated support" and that Chase had "premium banking services with dedicated banker support" are not representations of current **fact** but are nonspecific sales talk (that do not in any event seem to have anything to do with why the transaction reversals were allegedly wrongful). *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 461-62 (Tex. App.—Dallas 1990) (reh. den.) (opinion and sales "puffing" are defenses to alleged DTPA misrepresentations); *CAS Ltd. v. TM Aviation Partners, L.P.*, No. 05-15-00779-CV, 2016 WL 4151455, *4 (Tex. App.—Dallas, Aug. 4, 2016) (specificity of the statement is a factor regarding whether a statement is puffery vs. an actionable misrepresentation).   Similarly, the other two alleged misrepresentations do not relate to the quality of a good or service but, as discussed elsewhere in this Motion, implicate contractual rights and duties.   Paragraph 76, alleging "unconscionable acts," is conclusory and parrots the statutory language without pleading sufficient facts to establish a DTPA cause of action.

> 2.   Plaintiffs are not DTPA "consumers" with regard to disputed credit card transactions.

The DTPA claim as it relates to any credit card transactions must also be dismissed, because credit card holders are not DTPA consumers.  *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 843 (S.D. Tex. 2009), *aff'd sub nom. Cushman v. GC Servs., L.P.*, 397 F. App'x. 24 (5th Cir. 2010).

> 3.   Plaintiffs' DTPA claim is merely a claim for breach of contract.

Allegations of breach of contract, even when pled as "misrepresentations," without more, do not constitute false, misleading, or deceptive acts under the DTPA.  *Canfield v.*

16

*Bank One*, 51 S.W.3d 828, 839 (Tex. App.—Texarkana 2001, pet. denied); *Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 191 (5th Cir. 1986) (dismissing DTPA claim arising out of errors in a published yellow pages advertisement because "the 'misrepresentation'… was nothing more than Southwestern Bell's failure to perform its promise to correctly print the ad").  "Nonperformance under a contractual obligation does not equate to misrepresentation under the DTPA.  If so, then every breach of contract would be converted to a DTPA claim."  *Canfield*, 51 S.W.3d at 839.  The essence of Plaintiffs' claims is that Chase wrongfully reversed transactions Plaintiffs had made, which clearly implicates the parties' rights and duties under their contractual relationships.

4.    Plaintiffs' DTPA claim is precluded by the economic loss rule.

The Texas Supreme Court has extended the principles underlying the economic loss rule to DTPA claims.  *BCC Merch. Sols*., *Inc. v. Jet Pay*, *LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015).  An allegation of a breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA, and "as with the economic loss rule, the inquiry is whether the alleged unconscionable conduct 'could have resulted in the absence of a contract between the parties.'"  *Shakeri v. ADT Sec. Servs*., *Inc*., 816 F.3d 283, 295 (5th Cir. 2016) (quoting *Crawford v. Ace Sign*, *Inc*., 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)).

Plaintiffs do not specify any alleged conduct that would <u>not</u> exist but for their accounts held at Chase, subject to the applicable account agreements.  *Salek v. Suntrust Mortg., Inc.*, No. 4:18-cv-1664, at *20 (S.D. Tex. Aug. 8, 2018) (granting a motion to dismiss, noting "… Plaintiff's DTPA claim rests on the untenable premise that Defendant's

alleged breach of the Deed of Trust also constitutes an unconscionable act within the meaning of the DTPA. Under Texas law, such claims may be asserted in contract only, and not in tort under the DTPA").

Plaintiffs' pleading of their DTPA claim is deficient and should be dismissed.

## G. Plaintiffs Do Not Plead A Plausible Right to Recover Under UCC Article 4A.

Plaintiffs plead this claim as an alternative to their other causes of action "to the extent that those claims might cover the same subject matter." Complaint ¶ 80.[7] The claim focuses only on Chase's reversal of a $22,312.30 wire transfer whereby Plaintiffs transferred funds from Dash's account to Henshilwood's Wells Fargo account. *Id*. ¶ 41. Plaintiffs initiated the wire transfer on August 19, 2024 (*i.e.*, after Henshilwood signed the Resolution stating that Corona had become Dash's President and sole owner, and after Corona had removed Plaintiffs as Authorized Persons on Dash's accounts). Plaintiffs allege Chase improperly reversed, or allowed or facilitated a clawback, of the transaction after Wells Fargo had received the funds. *Id*.

Plaintiffs admit that "a bank that executes an unauthorized funds transfer must refund the money to its customer," and here, the funds transfer(s) at issue were authorized by Corona on behalf of Dash. Chase was permitted to follow the instructions of Corona, an Authorized Person, and, as stated expressly section IX.B. of the Deposit Account Agreement, Chase "will not be liable for anything we do when following [the] instructions"

---

[7] Article 4A preempts Plaintiffs' other alleged theories of recovery for improper reversal this wire transfer, including their negligence claim, which expressly complains of a wire transfer, and any others. *Moody Nat. Bank v. Texas City Dev., Co.*, 46 S.W.3d 373, 377-78 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

of an Authorized Person.  **Ex. C** at 22.

**H.    Plaintiffs Do Not Adequately Plead A Right to Mental Anguish Damages.**

Texas law does not support a claim for mental anguish damages arising from a breach of contract.  *City of Tyler v. Likes*, 962 S.W.2d 489, 498 (Tex. 1997) ("we have consistently and recently held that without proof of heightened culpability, mental anguish is not recoverable under other causes of action for injuries to economic rights such as breach of contract"); *Delgado v. Methodist Hosp.*, 936 S.W.2d 479, 483-84 (Tex. App.—Houston [14th Dist.] 1996, no writ) (observing that mental anguish damages are not generally recoverable in a breach of contract claim); *Hallmark v. Hand*, 885 S.W.2d 471, 481 (Tex. App.—El Paso 1994, writ denied) ("mental anguish damages are not recoverable in a cause of action for breach of contract nor in a tort action arising from a contractual breach").

As discussed above, this action sounds primarily in contract.  Even if mental anguish damages were available, however, Plaintiffs fail to adequately plead entitlement to such damages.  Plaintiffs must plead more than aggravation or frustration.  *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) ("An award for mental anguish must be supported by either (1) a substantial disruption in the plaintiff's daily routine, or (2) evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger"); *Bennett v. Grant*, 525 S.W.3d 642, 648 (Tex. 2017) (same).  Accordingly, Plaintiffs' claim for mental anguish damages should be dismissed.

I.    **Plaintiffs' Second Amended Complaint Remains Confusing and Insufficiently Pled.**

Plaintiffs' 38-page Complaint is still confusing and conclusory and fails to adequately plead <u>facts</u> that would enable Chase to effectively respond.

First, although Plaintiffs do not sue as Dash, it is unclear when they are alleging breach of a duty allegedly owed to Dash, versus duties allegedly owed to the Plaintiffs, individually; nor do they explain how Plaintiffs were damaged by the return of various funds to Dash, or transfers from one Dash account to another, if, as Plaintiffs allege, Plaintiff Henshilwood still has an ownership interest in Dash.

Second, Plaintiffs are not clear about which transactions are the subject of each cause of action.  Plaintiffs claim interest in multiple accounts (including their own and Dash's).  Complaint at ¶ 13.  They list various transactions in their facts section, *id*. at ¶¶ 41-45, but are not clear as to which transactions are complained of for each cause of action

Third, the relevant contracts and certain of the statutes under which Plaintiffs make claims have notification requirements that can trigger defenses to liability if not met, yet Plaintiffs do not plead ***when*** they received the first statement on which the alleged error appeared; how, if at all, they complied with their obligations; or when Chase was provided with the first notice of each disputed transaction.

Because Plaintiffs have failed to plead their claims adequately, despite re-pleading twice, their claims should be dismissed.

J.    **Alternatively, the Court Should Abate This Lawsuit While Plaintiffs Litigate Their State Court Lawsuit Concerning Ownership of Dash.**

For the reasons set forth above, Chase believes it is not necessary for the Court to

determine "who owns Dash" to reach the conclusion that Plaintiffs did not plead sustainable claims in this matter.  However, in the event the Court determines dismissal is not warranted, Chase asks the Court to abate this matter while Plaintiffs and their former business partner litigate their separate, ongoing state court lawsuit concerning Dash's ownership, which involves many of the same transactions at issue here.  *See, e.g.*, *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (recognizing that, incidental to a district court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" is "the power to stay proceedings.")

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Chase respectfully requests that all Plaintiffs' claims be dismissed and that Chase be awarded its fees and taxable costs as permitted by law, and for any and all further relief to which Chase may be justly entitled.  If the Court determines dismissal is not warranted, Chase asks the Court to abate this lawsuit while Plaintiffs and Corona pursue their respective claims regarding ownership of Dash Title in their currently ongoing state court proceeding.

Dated:  November 3, 2025   Respectfully submitted,

          */s/ Jennifer Tomsen*
          Jennifer Tomsen
          Texas Bar No. 24064535
          tomsenj@gtlaw.com
          Stephen Edmundson
          Texas Bar No. 00796507
          edmundsons@gtlaw.com
          GREENBERG TRAURIG, LLP
          1000 Louisiana Street, Suite 6700
          Houston, Texas 77002
          Telephone: 713.374.3500
          Facsimile: 713.374.3505

          **ATTORNEYS FOR DEFENDANT**
          **JPMORGAN CHASE BANK, N.A.**

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on this 3rd day of November, 2025 a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system.

          */s/ Jennifer Tomsen*
          Jennifer Tomsen