**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **NATALIE HENSHILWOOD,** | § |
| **SHAWN JONES, AND** | § |
| **PRIME TITLE AGENCY, INC.** | § |
| | § |
| *Plaintiffs,* | § |
| | § |
| **v.** | § |
| | § |
| **JPMORGAN CHASE BANK,** | § |
| **NATIONAL ASSOCIATION,** | § |
| | § |
| *Defendant.* | § |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**COVER SHEET**

i

**TABLE OF CONTENTS**

I.    **NATURE AND STAGE OF THE PROCEEDING** ..........1

II.   **ISSUES TO BE RULED UPON AND STANDARD OF REVIEW** ............1

III. **SUMMARY OF THE ARGUMENT** ..........................4

IV. **ARGUMENT**..................................5

   **A.**  **The Complaint Satisfies Federal Notice Pleading Standards Under Rule 8** ..........5

     1.   Plaintiffs Have Provided a "Short and Plain Statement" Giving Fair Notice ..........5

     2.   Alternative and Inconsistent Allegations Are Permitted ..........6

     3.   Failure to Plead Compliance with Notice Requirements Is Not a Ground for Dismissal..........7

     4.   The Proper Remedy for Vagueness is Rule 12(e), Not Dismissal ..........7

   **B.**  **Plaintiffs Adequately Pled Breach of Contract Under Texas Law**..........8

     1.   Plaintiffs Are Not Required to Cite Specific Contract Provisions by Number..........8

     2.   The Account Agreements Do Not Negate Chase's Duty of Ordinary Care ..........9

   **C.**  **Plaintiffs Have Standing Because They Suffered Direct Injury to Their Own Accounts**..........10

     1.   The Injury is Direct and Personal, Not Derivative ..........10

     2.   Chase's Authorities Are Inapposite ..........11

   **D.**  **Plaintiffs Pled Viable EFTA Claims for Unauthorized Transfers from Consumer Accounts**..........12

     1.   The EFTA Applies to Debits from Consumer Accounts ..........12

     2.   The "Wire Transfer" and "Overdraft" Exceptions Do Not Bar the Claims..........13

     3.   Plaintiffs Pled Timely Notice and Lack of Benefit..........13

   **E.**  **The Economic Loss Rule Does Not Bar Plaintiffs' Statutory and Intentional Tort Claims**..........14

     1.   Chase Violated Independent Statutory Duties of Ordinary Care and Good Faith ...14

     2.   Fraud and Intentional Torts Exception ..........15

     3.   Statutory Causes of Action (DTPA) ..........15

     4.   Conversion Claims for Independent Wrongful Acts Are Not Barred..........15

   **F.**  **Plaintiffs Pled Specific Facts Supporting Gross Negligence and Exemplary Damages**..........16

     1.   Objective Prong: Extreme Degree of Risk..........16

     2.   Subjective Prong: Actual Awareness and Conscious Indifference..........17

   **G.**  **Plaintiffs Stated a Valid Claim for Conversion of Specific, Identifiable Funds** ..18

     1.   Money is Subject to Conversion When Identifiable ..........18

     2.   Wrongful Dominion vs. Authorization ..........18

     3.   The Economic Loss Rule Does Not Bar Independent Torts..........19

**H.   Plaintiffs Are "Consumers" Under the DTPA and Pled Actionable Misrepresentations............................................................................................19**

    1.   Plaintiffs Are Consumers of Banking Services .......................................19

    2.   Actionable Misrepresentations and Laundry List Violations ..................20

    3.   Unconscionable Conduct .........................................................................21

**I.   UCC Article 4A Prohibits Chase's Reversal of the Completed Wire Transfer ...21**

    1.   Finality of Completed Transfers ..............................................................21

    2.   Liability for Unauthorized Orders ...........................................................22

    3.   Preemption is Limited..............................................................................22

**J.   Mental Anguish Damages Are Recoverable for DTPA Violations and Gross Negligence .............................................................................................23**

**K.   Abatement is Improper Because the State Court Action Involves Different Parties and Issues.....................................................................................23**

**V.   CONCLUSION .............................................................................................24**

## TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................ 1, 2

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .................................................................................. 6

*Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ............................................................................. 2, 6

*Twombly and Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................. 2, 6

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ........................................................................... 4, 23

**FEDERAL CASES**

*Rountree v. Fed. Express Dall.,*
    No. 3:23-cv-1089-N ................................................................................ 6

*Hodge v. Engleman,*
    90 F.4th 840 (5th Cir. 2024) ................................................................... 7

*Garrett v. Commonwealth Mortg. Corp. of Am.,*
    938 F.2d 591 (5th Cir. 1991) .................................................................. 7

*Residents Against Flooding v. Reinvestment Zone No. Seventeen,*
    260 F. Supp. 3d 738 (S.D. Tex. 2017) .................................................... 7

*Shellnut v. Wells Fargo Bank, N.A.,*
    2017 No. 02-15-00204-CV; 2017 WL 1538166 (2017) ......................... 15

*Cexchange, LLC v. Top Wireless Wholesaler,*
    2019 No. 05-17-01318-CV; 2019 WL 3986299 (2019) ......................... 15

*In re Kimco Developers, Inc.,*
    2024 No. 14-24-00361-CV; 2024 WL 5173852 (2024) ......................... 16

657 F. Supp. 2d 834 (S.D. Tex. 2009) ........................................................ 20

*Am. Title Ins. Co. v. Shawmut Bank of R.I., N.A.,*
    812 F. Supp.301 (D.R.I. 1993) ............................................................... 22

*Mazuma Holding Corp. v. Bethke,*
    1 F. Supp. 3d 6 (E.D.N.Y. 2014) ........................................................... 24

**STATE CASES**

*Am. Heritage, Inc. v. Nevada Gold & Casino, Inc.*,
    259 S.W.3d 816 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ........................ 2, 11

*Herzing v. Metro. Life Ins. Co.*,
    907 S.W.2d 574 (Tex. App.—Corpus Christi 1995, writ denied) ........................ 2, 11

*Jim Walter Homes, Inc. v. Reed*,
    711 S.W.2d 617 (Tex. 1986)...................................................................................... 3

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998)................................................................................. 3, 15

*Mobil Oil Corp. v. Ellender*,
    968 S.W.2d 917 (Tex. 1998)............................................................................... 3, 16

*Waisath v. Lack's Stores, Inc.*,
    474 S.W.2d 444 (Tex. 1971)............................................................................... 3, 18

*Houston Nat'l Bank v. Biber*,
    613 S.W.2d 771 (Tex. Civ. App.—Houston [14th Dist.) ..................................... 3, 18

*La Sara Grain Co. v. First Nat'l Bank of Mercedes*,
    673 S.W.2d 558 (Tex. 1984)............................................................................... 3, 19

*Moody Nat'l Bank v. Texas City Dev. Ltd.*,
    46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).................... 4, 22

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*,
    574 S.W.3d 882 (Tex. 2019)..................................................................................... 8

*Milton M. Cooke Co. v. First Bank & Trust*,
    290 S.W.3d 297 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ........................ 9, 14

*McDowell v. Dall. Teachers Credit Union*,
    772 S.W.2d 183 (Tex. App.—Dallas 1989, no writ) .................................................. 9

*State Nat'l Bank v. Academia, Inc.*,
    802 S.W.2d 282 (Tex. App.—Corpus Christi 1990, writ denied) ............................. 11

*Stephens v. Three Finger Black Shale P'ship*,
    580 S.W.3d 687 (Tex. App.—Eastland 2019, pet. denied) ...................................... 11

*El T. Mexican Rests., Inc. v. Bacon*,
    921 S.W.2d 247 (Tex. App.—Houston [1st Dist.] 1995, writ denied) ..................... 11

*In re Vistaprint Corp. Mktg. & Sales Pracs. Litig.*
    No. 4:08-MD-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) ........................ 13

*Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014)...................................................................... 14

*JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*,
    508 S.W.3d 391 (Tex. App.—Fort Worth 2014).................................... 15

*Dallas Fire Ins. Co. v. Tex. Contractors Sur. & Cas. Agency*,
    128 S.W.3d 279 (Tex. App.—Fort Worth 2004)..................................... 15

159 S.W.3d 895 (Tex. 2004)............................................................................ 15

*Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*,
    192 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2006, no pet.).................... 16, 19

*In re Bella Corp.*,
    648 S.W.3d 373 (Tex. App.—Tyler 2021, orig. proceeding)................................. 16

*Medina v. Zuniga*,
    593 S.W.3d 238 (Tex. 2019)...................................................................... 17

*Lee Lewis Constr., Inc. v. Harrison*,
    70 S.W.3d 778 (Tex. 2001)........................................................................ 17

*Paschal v. Great W. Drilling, Ltd.*,
    215 S.W.3d 437 (Tex. App.—Eastland 2006, pet. denied) ....................... 18

*Intermarkets U.S.A., Inc. v. C-E Natco*,
    749 S.W.2d 603 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ..................... 18

*Southwestern Bell Tel. Co. v. DeLanney*,
    809 S.W.2d 493 (Tex. 1991)...................................................................... 19

*Cameron v. Terrell & Garrett, Inc.*,
    618 S.W.2d 535 (Tex. 1981)...................................................................... 19

*Maginn v. Norwest Mortg., Inc.*,
    919 S.W.2d 164 (Tex. App.—Austin 1996, no writ)................................ 20

*Autohaus, Inc. v. Aguilar*,
    794 S.W.2d 459 (Tex. App.—Dallas 1990, writ denied) ......................... 20

*Smith v. Baldwin*,
    611 S.W.2d 611.......................................................................................... 20

*Bradford v. Vento*,
    48 S.W.3d 749 (Tex. 2001)........................................................................ 21

*Ins. Co. of N. Am. v. Morris*,
    981 S.W.2d 667 (Tex. 1998)...................................................................... 21

*Norwest Mortg., Inc. v. Salinas*,
    999 S.W.2d 846 (Tex. App.—Corpus Christi 1999, pet. denied)...............................23

*City of Tyler v. Likes*,
    962 S.W.2d 489 (Tex. 1997)....................................................................................23

*Parkway Co. v. Woodruff*,
    901 S.W.2d 434 (Tex. 1995)....................................................................................23

**OTHER CASES**

*BN*,
    2023 WL 4533929 (2023)..........................................................................................6

**FEDERAL STATUTES**

Title 15 U.S.C. § 1693 ......................................................................................................2

Title 15 U.S.C. § 1693(b)................................................................................................12

Title 15 U.S.C. § 1693(7)................................................................................................12

Title 15 U.S.C. § 1693a(2)..............................................................................................12

Title 15 U.S.C. § 1693a(7)(B) ........................................................................................13

Title 15 U.S.C. § 1693a(7)(D) ........................................................................................13

Title 15 U.S.C. § 1693a(12)............................................................................................13

Title 15 U.S.C. § 169 ......................................................................................................14

**STATE STATUTES**

Tex. Bus. & Com. Code § 1.304.................................................................................2, 9

Tex. Civ. Prac. & Rem. Code § 41.001(11)...............................................................3, 16

Tex. Bus. & Com. Code § 17.45(4) ...........................................................................3, 19

Tex. Bus. & Com. Code § 4A.104(1) .........................................................................4, 21

Tex. Bus. & Com. Code § 4A.405(c) .........................................................................4, 21

Tex. Bus. & Com. Code § 4.103(a) ............................................................................9, 14

Tex. Fin. Code § 34.307..................................................................................................10

Tex. Bus. & Com. Code § 4.103(e) ................................................................................15

Tex. Bus. & Com. Code § 17.46(b)(5), (7)........................................................ 20

Tex. Bus. & Com. Code § 17.45(5) .................................................................. 21

Tex. Bus. & Com. Code § 4A.211(c) ............................................................... 21

Tex. Bus. & Com. Code § 4A.202(b) ............................................................... 22

Tex. Bus. & Com. Code § 4A.204(a) ............................................................... 22

Tex. Bus. & Com. Code § 17.50(b)(1) ............................................................. 23

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................... 1, 7, 12

Fed. R. Civ. P. 8(a)(2).............................................................................. *passim*

Fed. R. Civ. P. 8(d) .................................................................................. 6, 23

Fed. R. Civ. P. 8(d)(2)................................................................................... 6

Fed. R. Civ. P. Rule 12(e) ............................................................................. 7

Fed. R. Civ. P. 12(e) ..................................................................................... 8

Fed. R. Civ. P. 8(a) ................................................................................... 8, 24

Fed. R. Civ. P. 15(a)(2)............................................................................... 25

**FEDERAL REGULATIONS**

Title 12 C.F.R. § 1005.3(b)........................................................................ 13

**AGENCY DECISIONS**

see also U.C.C. § 4A-203 ........................................................................... 22

## I.   NATURE AND STAGE OF THE PROCEEDING

This lawsuit arises from Defendant JPMorgan Chase Bank, N.A.'s ("Chase") unauthorized seizure of over $100,000 from the personal and business accounts of Plaintiffs Natalie Henshilwood, Shawn Jones, and Prime Title Agency, Inc. ("Prime Title").

Plaintiffs filed their Second Amended Complaint ("Complaint") [Dkt. 25] alleging that Chase disregarded its own account agreements, banking regulations, and industry standards by accepting the unsubstantiated claims of a third party, Veronica Corona, to be the sole owner of Dash Title Corp. Chase accepted a non-binding, expired "term sheet" as proof of ownership, ignoring the lack of required corporate resolutions or stock transfer agreements. Based on this insufficient documentation, Chase removed Plaintiffs as authorized signers without notice, reversed completed wire transfers days after they were final, and clawed back funds from Plaintiffs' *personal* accounts and separate business accounts to satisfy alleged debts of Dash Title Corp.

Chase removed this action to this Court and has now filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) [Dkt. 35]. Chase argues the Complaint fails to state a claim or, alternatively, requests abatement pending the outcome of a state court lawsuit between Plaintiffs and Corona—litigation to which Chase is not a party. Plaintiffs file this Response in Opposition to show that they have pled plausible claims for relief.

## II.   ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

<u>Issue 1</u>: **Whether the Complaint satisfies the notice pleading requirements of Rule 8(a).**

**Standard of Review:** Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550

1

U.S. 544, 555 (2007). Technical imperfections do not warrant dismissal if notice is adequate. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–14 (2002).

**Issue 2**: **Whether Plaintiffs adequately pled breach of contract by alleging Chase violated duties of verification and notice contained in the account agreements.**

      **Standard of Review:** To survive dismissal, a plaintiff must plead facts supporting (1) a valid contract; (2) performance; (3) breach; and (4) damages. *See Twombly*, 550 U.S. at 555. Additionally, not only do Plaintiffs provide fair notice of the breaches, but Plaintiffs cite to two specific provisions they contend were breached (including Sections III.A.6 and III.D.5) as well as the implied duty of good faith imposed by Tex. Bus. & Com. Code § 1.304. Dkt. 25 (Complaint), ¶ 56.

**Issue 3**: **Whether Plaintiffs have standing to sue for injuries to their own personal and business accounts.**

      **Standard of Review:** Standing requires the plaintiff to be "personally aggrieved" with a direct injury. *Am. Heritage, Inc. v. Nevada Gold & Casino, Inc.*, 259 S.W.3d 816, 819 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A shareholder or individual has standing to sue for a direct injury to themselves (such as debits from their personal account) that is independent of any duty owed to the corporation. *Herzing v. Metro. Life Ins. Co.*, 907 S.W.2d 574, 584 (Tex. App.—Corpus Christi 1995, writ denied).

**Issue 4**: **Whether Plaintiffs stated a claim under the Electronic Fund Transfer Act (EFTA) for unauthorized debits from consumer accounts.**

      **Standard of Review:** To state an EFTA claim, a plaintiff must allege an unauthorized electronic fund transfer from a consumer account and the financial institution's failure to comply with error resolution or liability limitation provisions. 15 U.S.C. § 1693 *et seq.* At the pleading stage, allegations that the account was established for personal use and that the transfer was unauthorized are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Detailed factual allegations" are not required, but Plaintiffs have provided them. *Id.* at 679.

**Issue 5**: **Whether the Economic Loss Rule bars Plaintiffs' tort and statutory claims.**

**Standard of Review:** The economic loss rule precludes tort recovery when the only injury is the economic loss to the subject of a contract. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). However, the rule does not bar claims where the duty is imposed by law independent of the contract (e.g., statutory duties under the UCC or DTPA) or involves intentional torts such as fraud. *See, e.g.*, *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998).

**Issue 6**: **Whether Plaintiffs pled sufficient facts to support Gross Negligence.**

**Standard of Review:** Gross negligence requires (1) an objective extreme degree of risk; and (2) subjective actual awareness and conscious indifference. Tex. Civ. Prac. & Rem. Code § 41.001(11). Subjective awareness may be inferred from circumstantial evidence alleged in the pleadings. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

**Issue 7**: **Whether Plaintiffs stated a valid claim for Conversion.**

**Standard of Review:** Conversion requires the unauthorized and wrongful exercise of dominion and control over another's property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Money is subject to conversion if it is a specific, identifiable fund. *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

**Issue 8**: **Whether Plaintiffs are "consumers" under the DTPA.**

**Standard of Review:** Whether a plaintiff is a "consumer" is a question of law based on whether they sought or acquired goods or services by purchase or lease. Tex. Bus. & Com. Code § 17.45(4). Banking services such as account management and security qualify as "services." *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex. 1984) ("The services provided by a bank in connection with a checking account are within the scope of the DTPA.").

**Issue 9**: **Whether UCC Article 4A prohibits Chase's reversal of the completed wire transfer.**

3

**Standard of Review:** Under UCC Article 4A, a funds transfer is completed upon acceptance by the beneficiary's bank. Tex. Bus. & Com. Code § 4A.104(1). A payment condition requiring a potential post-completion reversal is unenforceable. *Id.* § 4A.405(c). Article 4A preempts common law claims only to the extent they are inconsistent with its provisions; for instance, conversion is not preempted. *Moody Nat'l Bank v. Texas City Dev. Ltd.*, 46 S.W.3d 373, 377–78 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Article 4A has never been interpreted to preempt all common law claims; it is intended only to bar those claims that would be inconsistent with any of the article's provisions.")

<u>Issue 10</u>: **Whether abatement is warranted.**

**Standard of Review:** Federal courts have a "virtually unflagging obligation" to exercise jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Abstention or abatement is an "extraordinary and narrow exception" allowed only in "exceptional circumstances" where parallel state proceedings will resolve the federal action. *Id.* at 813.

## III.  <u>SUMMARY OF THE ARGUMENT</u>

Chase's Motion to Dismiss asks this Court to ignore the well-pleaded allegations of the Complaint and resolve complex factual disputes at the pleading stage. Contrary to Chase's assertions, Plaintiffs have provided a clear and detailed account of Chase's wrongful conduct: Chase disregarded the corporate formalities required by Texas law and its own contracts by allowing a third party, Veronica Corona, to seize control of Dash Title Corp. accounts based on an expired, non-binding "term sheet." When Plaintiffs—the long-standing owners and authorized signers—objected, Chase not only failed to investigate but actively participated in the harm by freezing Plaintiffs' access without notice, reversing completed wire transfers in violation of the UCC, and seizing funds from Plaintiffs' *personal* accounts to cover alleged corporate debts.

Plaintiffs have adequately pled breach of contract by alleging Chase violated the Account Agreements' verification and notice protocols. The Economic Loss Rule does not bar Plaintiffs' tort claims because Chase owed independent statutory duties under the Texas UCC (to exercise ordinary care and good faith) and the DTPA (to avoid unconscionable and deceptive acts). Furthermore, Plaintiffs have standing because they suffered direct injuries—Chase took money from their *personal* and *separate business* accounts, an injury distinct from any harm to Dash Title Corp.

Regarding the specific statutory claims, Plaintiffs have pled viable EFTA violations for unauthorized electronic debits from consumer accounts. Chase's reliance on the "business account" exception is factually misplaced at this stage, as the Complaint alleges debits from personal accounts. Similarly, the UCC Article 4A claim is robust: Chase reversed a completed wire transfer after the beneficiary bank accepted it, violating the finality rules of Section 4A.405. Finally, abatement is improper because the state court litigation involves different parties (Chase is not a defendant there) and different issues (corporate ownership vs. banking liability). Resolving Dash's ownership will not determine whether Chase violated federal EFTA regulations or state UCC provisions by seizing Plaintiffs' personal funds without due process.

## IV.   ARGUMENT

### A.   The Complaint Satisfies Federal Notice Pleading Standards Under Rule 8

Chase argues that the Complaint should be dismissed because it is "confusing" and "conclusory." [Dkt. 35 at 16, 20, 30]. Chase further contends that the Complaint fails to identify which transactions were unauthorized or explain why chargebacks were improper. [Dkt. 35 at 9]. These arguments seek to impose a heightened pleading standard that contradicts the liberal notice pleading requirements of the Federal Rules of Civil Procedure.

#### 1.  *Plaintiffs Have Provided a "Short and Plain Statement" Giving Fair Notice*

5

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has clarified that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam)(internal quotation omitted). The purpose of the complaint is to provide notice, with discovery and summary judgment serving to clarify and resolve factual disputes. *See Swierkiewicz*, 534 U.S. at 512.

Chase's assertion that the Complaint fails to identify "which transactions were allegedly unauthorized" is contradicted by the plain text of the pleading. The Complaint specifically itemizes the disputed transactions with granular detail, including dates, amounts, and account numbers. *See* Dkt. 25 (Complaint) ¶¶ 41 (August 19 wire of $22,312.30), 42 (September 27 debit of $31,127.52), 44 (listing specific amounts and dates for credit card payments), and 45 (withholding of $9,500 from Prime Title). This level of detail satisfies the plausibility standard of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It provides Chase with ample notice to frame a response. *See Rountree v. Fed. Express Dall.*, No. 3:23-cv-1089-N-BN, 2023 WL 4533929, (N.D. Tex. July 12, 2023) (denying motion for more definite statement where complaint provided sufficient notice to allow defendant to respond).

### 2. *Alternative and Inconsistent Allegations Are Permitted*

Chase complains of inconsistent allegations regarding whether Ms. Henshilwood or Ms. Corona is the "rightful owner" of Dash Title. [Dkt. 35 at 7, 20-21]. However, Federal Rule of Civil Procedure 8(d) expressly permits a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically" and states that a party may state separate claims "regardless of consistency." Fed. R. Civ. P. 8(d)(2)-(3). Plaintiffs have pled that the transaction

with Corona was never consummated and that the "term sheet" expired, rendering Ms. Henshilwood the continued owner. *See* Dkt. 25 (Complaint) ¶¶ 19–23. Any uncertainty regarding the legal ownership of Dash Title is a factual dispute to be resolved in discovery, not a pleading deficiency warranting dismissal. *See Hodge v. Engleman*, 90 F.4th 840, 844-45 (5th Cir. 2024) (court cannot look beyond pleadings or resolve disputed facts on Rule 12(b)(6) motion unless it provides notice to the non-movant and provides a 10-day period for non-movant to submit its own evidence).

### 3.  *Failure to Plead Compliance with Notice Requirements Is Not a Ground for Dismissal*

Chase argues the Complaint is deficient for failing to plead strict compliance with notification requirements in the Account Agreements. [Dkt. 35 at 5-6, 20]. This argument improperly attempts to adjudicate an affirmative defense at the pleading stage.  Dismissal based on an affirmative defense is appropriate only if the defense appears clearly on the face of the pleadings. *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).

Plaintiffs **have pled that they provided notice and demanded correction**. *See* Dkt. 25 (Complaint) ¶ 47. Whether that notice complied with every technical requirement of the contract is a fact question. Plaintiffs are not required to plead evidence negating every potential defense to survive a motion to dismiss.

### 4.  *The Proper Remedy for Vagueness is Rule 12(e), Not Dismissal*

If Chase genuinely believes the Complaint is "so vague or ambiguous" that it cannot reasonably prepare a response, the proper remedy under the Federal Rules is a motion for a more definite statement under Rule 12(e), not dismissal. *Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 260 F.Supp.3d 738, 757 (S.D. Tex. 2017). Such motions are disfavored and granted only when the complaint is "so excessively vague and ambiguous to be unintelligible and as to prejudice the defense seriously in attempting to answer it." *Id.* Because Chase was able to draft a detailed Motion to Dismiss attacking the merits of the claims, the Complaint clearly

provided sufficient notice. *See* Fed. R. Civ. P. 12(e) (noting that a complaint must be "so vague or ambiguous that [Defendant] cannot reasonably prepare a response.").

Accordingly, the Complaint satisfies the requirements of Rule 8(a), and Chase's arguments regarding vagueness and confusion should be rejected.

## B.  Plaintiffs Adequately Pled Breach of Contract Under Texas Law

Chase seeks dismissal of Plaintiffs' breach of contract claim on two grounds: (1) failure to cite specific contractual provision numbers, and (2) that the Account Agreements authorize Chase's conduct. Both arguments fail under applicable federal pleading standards and Texas substantive law.

### 1.  *Plaintiffs Are Not Required to Cite Specific Contract Provisions by Number*

Chase argues that Plaintiffs' claim is "inadequately pled" because they did not identify specific section numbers or essentially quote verbatim language from the Account Agreements. [Dkt. 35 at 4-5]. This argument seeks to impose a heightened pleading requirement that does not exist under Federal Rule of Civil Procedure 8(a). To state a claim for breach of contract under Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).

Plaintiffs have satisfied each element. The Complaint identifies the specific contracts at issue: the "Account Agreements," including the Deposit Account Agreement and Business Banking Resolution. Dkt. 25 (Complaint) ¶ 14. Plaintiffs alleged they performed their obligations by maintaining the accounts in good standing and paying required fees. *Id.* ¶ 55. Crucially, Plaintiffs alleged specific conduct constituting the breach: Chase processed unauthorized debits, failed to verify authority as required by the agreements and industry standards, and removed authorized signers without notice. *Id.* ¶ 56.

Additionally, Plaintiffs **have also identified specific breaches of contract**: **Section III.A.6** by processing unauthorized debits and reversals without proper authorization, **Section III.D.5** of the Account Agreements through a timely failure to investigate, **the implied obligation of good faith** imposed by Tex. Bus. & Com. Code § 1.304 Dkt. 25 (Complaint) ¶ 56

Chase relies on *Newhouse v. JPMorgan Chase Bank, N.A.* and *Morse v. Commonwealth Land Title Ins. Co.* to demand greater specificity. However, those cases involved plaintiffs who failed to identify *how* the contract was breached or *what duty* was violated. Here, Plaintiffs have explicitly detailed the nature of the breach: Chase accepted facially insufficient documentation (an expired term sheet) to transfer control of a corporation and subsequently permitted unauthorized withdrawals. These factual allegations provide Chase with ample notice of the breach of contract claim.

### 2.  *The Account Agreements Do Not Negate Chase's Duty of Ordinary Care*

Chase argues that the Account Agreements "negate" Plaintiffs' claims because they authorize Chase to rely on signature cards and set off funds from other accounts. [Dkt. 35 at 5-7]. This argument fails because Chase cannot contractually disclaim its statutory duty to exercise ordinary care and act in good faith.

Under the Texas Business and Commerce Code (UCC), a bank's responsibility for "lack of good faith or failure to exercise ordinary care" cannot be disclaimed by agreement. Tex. Bus. & Com. Code § 4.103(a); *see also id.* § 1.304 (imposing obligation of good faith). While parties may determine the standards by which that responsibility is measured, those standards cannot be "manifestly unreasonable." *Id.* § 4.103(a). Therefore, broad discretionary provisions in a deposit agreement do not shield a bank from liability if it exercises that discretion in bad faith or without ordinary care. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 304, n.8 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (recognizing non-waivable duties of good faith and ordinary care); *see also McDowell v. Dall. Teachers Credit Union*, 772 S.W.2d 183, 189 n.4 (Tex. App.—Dallas 1989, no writ) (whether bank exercised ordinary care is usually a fact

question for the jury, but a court can also find that bank <u>failed</u> to exercise ordinary care as a matter of law).

Plaintiffs allege that Chase failed to exercise ordinary care by relying on a resolution that referenced a "term sheet" that expired by its own terms to transfer control of Dash Title Corp., rather than requiring a valid stock transfer agreement or reasonable corporate resolution that identified the stock transferred. *See* Dkt. 25 (Complaint) ¶¶ 20–22. Accepting facially insufficient documentation to remove long-standing owners from a business account constitutes a failure to exercise ordinary care, regardless of general exculpatory language in the account agreement. Chase's argument that it was "contractually entitled" to rely on Corona's instructions [Dkt. 35 at 6] assumes the validity of the documentation it accepted—a central factual dispute in this case that cannot be resolved on a motion to dismiss.

Furthermore, Chase's reliance on its right to "set off" funds from "other accounts" [Dkt. 35 at 5] is unavailing at this stage. A bank's right of setoff requires a valid debt. *See* Tex. Fin. Code § 34.307 (limitations on setoff). Plaintiffs allege that the "debts" Chase sought to satisfy were created by Chase's own unauthorized reversals and negligence. A bank cannot manufacture a debt through its own failure to exercise ordinary care and then claim a contractual right to seize a customer's personal funds to satisfy it. Because Plaintiffs have plausibly alleged that Chase breached its non-waivable duties of good faith and ordinary care, the contract claim must proceed.

**C.  <u>Plaintiffs Have Standing Because They Suffered Direct Injury to Their Own Accounts</u>**

Chase erroneously argues that Plaintiffs lack standing because their claims implicate duties owed to Dash Title Corp. and that Plaintiffs are merely suing for injuries to the corporation. [Dkt. 35 at 7-8]. This argument fundamentally mischaracterizes the nature of this lawsuit. Plaintiffs are not suing derivatively for harm done to Dash Title Corp.; they are suing for direct injuries inflicted upon their **personal** and **separate business** accounts.

*1.  **The Injury is Direct and Personal, Not Derivative***

Under Texas law, standing requires that a plaintiff be "personally aggrieved" and have suffered a direct injury. *Am. Heritage, Inc. v. Nevada Gold & Casino, Inc.*, 259 S.W.3d 816, 819 (Tex. App.—Houston [1st Dist.] 2008, no pet.). While a shareholder generally lacks standing to sue for an injury suffered *solely* by the corporation, a shareholder may sue if they have suffered a direct injury that is independent of any duty owed to the corporation. *Herzing v. Metro. Life Ins. Co.*, 907 S.W.2d 574, 584 (Tex. App.—Corpus Christi 1995, writ denied) (citing *State Nat'l Bank v. Academia, Inc.*, 802 S.W.2d 282, 298 (Tex. App.—Corpus Christi 1990, writ denied)).

In this case, Plaintiffs allege that Chase invaded their personal financial sphere to satisfy the alleged debts of Dash Title Corp. Specifically:

- **Natalie Henshilwood:** Alleged that Chase withdrew $31,127.52 and other amounts directly from her *personal* Chase Private Client Account (ending in ****6963). Dkt. 25 (Complaint) ¶ 42. The injury is the loss of personal funds, not a diminution in the value of Dash Title stock.

- **Prime Title Agency, Inc.:** Alleged that Chase withheld $9,500 from its business account (ending in ****7831). Dkt. 25 (Complaint) ¶ 45. Prime Title is a separate legal entity from Dash Title Corp. It has standing to sue for the conversion of its own assets.

When a bank debits a personal account to cover a corporate overdraft, the personal account holder is the injured party. The claim belongs to the individual whose funds were taken, not the corporation that allegedly owed the debt. To hold otherwise would grant banks immunity to seize assets from any shareholder's personal account whenever a corporate account is overdrawn, leaving the individual with no legal recourse.

### 2. *Chase's Authorities Are Inapposite*

Chase relies on *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687 (Tex. App.—Eastland 2019, pet. denied) and *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247 (Tex. App.—Houston [1st Dist.] 1995, writ denied) to argue for dismissal. These cases are readily distinguishable.

In *Stephens*, the court held that a stakeholder could not recover personally for wrongs done *only* to the entity. Similarly, in *El T. Mexican Restaurants*, the court found that a plaintiff

could not recover for a corporate cause of action without alleging a representative capacity. In both cases, the plaintiffs were attempting to recover for damages sustained *by the business* (e.g., lost corporate profits or assets).

Here, Plaintiffs are not seeking to recover funds that belong to Dash Title. They are **seeking the return of funds taken from *Ms. Henshilwood's personal account* and *Prime Title's account*.** Because the injury (loss of personal funds) is distinct from any injury to Dash Title, Plaintiffs have individual standing to assert claims for breach of contract, conversion, and statutory violations regarding their own accounts.

**D.   Plaintiffs Pled Viable EFTA Claims for Unauthorized Transfers from Consumer Accounts**

Chase moves to dismiss Plaintiffs' Electronic Fund Transfer Act ("EFTA") claims (Count II) by arguing that the Act does not apply to the transactions at issue or that Plaintiffs failed to plead sufficient notice. [Dkt. 35 at 8-10]. These arguments rely on mischaracterizations of the Complaint and factual defenses that are inappropriate for resolution at the Rule 12(b)(6) stage.

### 1.   The EFTA Applies to Debits from Consumer Accounts

The EFTA was enacted to provide a "basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). It applies to "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." *Id.* § 1693a(7).

Chase argues that the EFTA does not apply because the transactions "relate to credit card purchases" or are "business" transactions. [Dkt. 35 at 8-9]. This confuses the *destination* of the funds with the *source* of the funds.

- **Source Matters:** EFTA protections attach to a "consumer's account," defined as an account established primarily for personal, family, or household purposes. 15 U.S.C. § 1693a(2). Plaintiffs specifically pled that the unauthorized debits occurred in Ms. Henshilwood's **personal** account (Chase Private Client Account

12

****6963). Dkt. 25 (Complaint) ¶ 13, 60. The fact that Chase unilaterally applied those funds to a business debt (Dash Title) does not strip the personal account of its statutory protection.

- **Electronic Debits:** Plaintiffs allege Chase executed electronic debits and reversals from this personal account. Dkt. 25 (Complaint) ¶ 42. Even if the underlying debt was a credit card balance, the *method* of taking payment—electronically debiting a consumer checking account—is an electronic fund transfer subject to Regulation E. *See* 12 C.F.R. § 1005.3(b). Chase's reliance on *In re Vistaprint Corp. Mktg. & Sales Pracs. Litig.*, No. 4:08-MD-1994, 2009 WL 2884727 (S.D. Tex. Aug. 31, 2009) is misplaced; that case held that charges *to* a credit card are not EFTA transfers. Here, Plaintiffs challenge the debits ***from* their checking account.**

### 2. The "Wire Transfer" and "Overdraft" Exceptions Do Not Bar the Claims

Chase attempts to categorize all disputed transactions as "wire transfers" or "overdraft protection" to invoke statutory exceptions. [Dkt. 35 at 8-9]. These are factual disputes.

- **Wire Transfer Exception:** While EFTA excludes transfers made through Fedwire (15 U.S.C. § 1693a(7)(B)), not all electronic transfers are wire transfers. Plaintiffs have alleged a series of "debits" and "reversals." Dkt. 25 (Complaint) ¶ 44 (specifically identifying each one); *also see* ¶¶ 1, 32, 37, 39, 56, 66, 80. Whether each specific transaction was processed via Fedwire (excluded) or ACH/internal transfer (included) is a matter for discovery. At the pleading stage, the Court must accept Plaintiffs' characterization of the transfers as electronic fund transfers.

- **Overdraft Exception:** EFTA excludes automatic transfers between a consumer's *own* accounts to cover an overdraft. 15 U.S.C. § 1693a(7)(D). This exception does not apply to the **seizure of funds from a consumer's personal account to pay a *third party's* (Dash Title's) alleged debt.** There is no allegation of an agreement authorizing such transfers for overdraft protection.

### 3. Plaintiffs Pled Timely Notice and Lack of Benefit

Chase argues that Plaintiffs "benefited" from the transfers (because Dash Title's debts were paid) and therefore the transfers were not "unauthorized" under 15 U.S.C. § 1693a(12). [Dkt. 35 at 10]. This argument fails because Plaintiffs explicitly pled that they suffered harm—including bounced payments to the IRS—and did not authorize the payments. Dkt. 25 (Complaint) ¶ 42. Whether a consumer "benefited" from a bank's unauthorized seizure of funds is a fact question for the jury, not a ground for dismissal.

13

Finally, Chase challenges the sufficiency of Plaintiffs' notice. Plaintiffs pled that they notified Chase "within two business days of discovering" the unauthorized transfers, specifically citing dates "including approximately September 27–29, 2024." Dkt. 25 (Complaint) ¶ 60(a). This meets the notice pleading standard. Rule 8 does not require a plaintiff to attach a certified mail receipt to the complaint; it requires a short and plain statement showing entitlement to relief. Plaintiffs have pled that they gave the notice required to limit their liability under 15 U.S.C. § 1693g and to trigger Chase's investigation duties under § 1693f. Dkt. 25 (Complaint) ¶ 60. Chase's alleged failure to investigate and provisionally recredit the account constitutes a violation of the Act.

### E.   The Economic Loss Rule Does Not Bar Plaintiffs' Statutory and Intentional Tort Claims

Chase invokes the Economic Loss Rule ("ELR") to seek dismissal of Plaintiffs' negligence, gross negligence, conversion, and DTPA claims. [Dkt. 35 at 10-11, 14, 17]. Chase argues that because the parties had a contractual relationship, any liability is limited to breach of contract. This argument fails because Texas law recognizes clear exceptions to the ELR where the defendant breaches a duty imposed by law independent of the contract, or where the claim is based on a statutory cause of action. *See Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718-19 (Tex. 2014). Plaintiffs have pled violations of independent statutory and common law duties that survive the ELR.

#### 1.   *Chase Violated Independent Statutory Duties of Ordinary Care and Good Faith*

Plaintiffs' negligence claims are not based merely on Chase's failure to fulfill the Deposit Account Agreement. They are based on Chase's breach of the duty of **ordinary care** imposed by the Texas Business and Commerce Code (UCC). Section 4.103(a) of the Texas UCC explicitly states that a bank cannot disclaim its responsibility for "failure to exercise ordinary care." Tex. Bus. & Com. Code § 4.103(a). This statutory duty exists independent of the contract. *See Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 304, n.8 (Tex. App.—Houston

14

[1st Dist.] 2009, no pet.) (recognizing non-waivable duties of good faith and ordinary care). Because the duty is imposed by law, the ELR does not bar the claim.

### 2. *Fraud and Intentional Torts Exception*

The Texas Supreme Court has held that the ELR does not bar claims for **fraud** or fraudulent inducement, even if the damages are purely economic. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998). Plaintiffs allege that Chase engaged in knowing misconduct and conscious indifference (Gross Negligence) and acted on fraudulent representations by a third party without proper verification. To the extent Chase's conduct facilitates fraud or involves bad faith, the ELR does not apply. *See* Tex. Bus. & Com. Code § 4.103(e) (allowing consequential damages for bad faith).

### 3. *Statutory Causes of Action (DTPA)*

The Texas Supreme Court has rejected a formulation of the economic-loss rule that "says you can never recover economic damages for a tort claim." *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 422 (Tex. App.—Fort Worth 2014) (citations omitted). The ELR does not bar statutory causes of action like the DTPA. *Shellnut v. Wells Fargo Bank, N.A.*, No. 02-15-00204-CV, 2017 WL 1538166, at *13 (Tex. App.—Fort Worth Apr. 27, 2017, pet. denied) (holding ELR did not bar DTPA unconscionability claim). The DTPA creates a distinct statutory duty not to engage in false, misleading, or unconscionable acts. Chase's alleged misrepresentations about its security protocols and its unconscionable seizure of funds fall within the statute's scope and are not barred by the existence of a contract. *See Cexchange, LLC v. Top Wireless Wholesaler*, No. 05-17-01318-CV, 2019 WL 3986299, at *8 (Tex. App.— Dallas Aug. 23, 2019, pet. denied) (ELR does not bar DTPA claims based on deceptive conduct). "[T]he economic loss rule does not bar Top's DTPA claims. *Id.* at p. 16 (citing *Dallas Fire Ins. Co. v. Tex. Contractors Sur. & Cas. Agency*, 128 S.W.3d 279, 293–94(Tex. App.—Fort Worth 2004), rev'd on other grounds, 159 S.W.3d 895 (Tex. 2004)(per curiam)).

### 4. *Conversion Claims for Independent Wrongful Acts Are Not Barred*

15

Finally, the ELR does not bar a conversion claim where the defendant's conduct constitutes an independent tort, such as the wrongful seizure of property not subject to the contract's terms. *See Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 126–29 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Plaintiffs allege that Chase converted funds from *personal* accounts and *separate business* accounts (Prime Title) to which Chase had no contractual right of setoff for Dash Title's debts. Seizing funds from a non-debtor third party (Prime Title) or a personal account without valid legal authority constitutes a wrongful act independent of the breach of the Dash Title account agreement.

**F.    Plaintiffs Pled Specific Facts Supporting Gross Negligence and Exemplary Damages**

Chase argues that Plaintiffs failed to plead facts supporting "gross" negligence, characterizing its actions as "standard banking transactions" and relying on the high evidentiary burden required at trial. [Dkt. 35 at 12-13]. This argument confuses the standard of proof at summary judgment or trial with the pleading standard under Rule 8. Plaintiffs have alleged specific facts that, taken as true, demonstrate Chase acted with conscious indifference to an extreme risk of harm.

Under Texas law, gross negligence consists of two elements: (1) an objective extreme degree of risk; and (2) subjective actual awareness and conscious indifference. Tex. Civ. Prac. & Rem. Code § 41.001(11); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). At the pleading stage, a plaintiff need only allege facts that support these elements; detailed evidentiary proof by "clear and convincing evidence" is not required to survive a motion to dismiss. *See In re Kimco Developers, Inc.*, No. 14-24-00361-CV, 2024 WL 5173852, at *4 (Tex. App.—Houston [14th Dist.] Dec. 31, 2024, orig. proceeding) (noting that gross negligence may be proven by circumstantial evidence) (citing *In re Bella Corp.*, 648 S.W.3d 373, 385 (Tex. App.—Tyler 2021, orig.  proceeding).

### 1.  *Objective Prong: Extreme Degree of Risk*

Chase characterizes its conduct as "standard banking transactions." This characterization ignores the specific factual allegations. Plaintiffs do not allege mere clerical errors. They allege that Chase abruptly froze active business and personal accounts and seized over $100,000 without notice, based on facially insufficient documentation from a third party. Dkt. 25 (Complaint) ¶ 42.

Viewed objectively, shutting down a business's operating capital and seizing personal funds necessary for tax obligations involves an "extreme degree of risk" of serious injury, not merely the "remote possibility of injury" or "minor harm." *See Medina v. Zuniga*, 593 S.W.3d 238, 241 (Tex. 2019). Chase's reliance on *Medina* is misplaced; that case involved a garden-variety car accident where the driver's conduct did not rise to gross negligence. Here, the risk was the total financial paralysis of Plaintiffs' businesses and personal lives—a risk that Chase's actions made a certainty.

### 2. *Subjective Prong: Actual Awareness and Conscious Indifference*

Plaintiffs have pled specific facts showing Chase's subjective awareness. The Complaint alleges:

- Plaintiffs repeatedly notified Chase, starting in September 2024, that the transfers were unauthorized and that the "term sheet" relied upon by Corona was expired and invalid. Dkt. 25 (Complaint) ¶¶ 20-23, 34; p. 7, n. 1; p. 10, n. 2.

- Chase possessed its own records showing Plaintiffs were the long-standing authorized signers. *Id.* ¶¶ 1, 34, 66, 67(c).

- Despite this actual knowledge of the dispute and the defects in Corona's documentation, Chase proceeded to seize funds and refuse to investigate further. *Id.* ¶ 48.

Proceeding with a course of action despite knowledge of a high risk of harm is the definition of conscious indifference. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). By alleging that Chase knew of the ownership dispute and the invalidity of the authorization yet continued to seize funds, Plaintiffs have sufficiently pled the subjective element of gross negligence.

17

**G.**  **Plaintiffs Stated a Valid Claim for Conversion of Specific, Identifiable Funds**

Chase seeks dismissal of the conversion claim (Count VI), arguing that money cannot be converted and that the Economic Loss Rule applies. [Dkt. 35 at 13-14]. Both arguments fail under Texas law.

### 1.  *Money is Subject to Conversion When Identifiable*

While money generally cannot be converted, Texas law recognizes an exception when the money is in the form of a "specific chattel," such as a specific deposit or identifiable fund. *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied).

Plaintiffs have satisfied this requirement by identifying the specific amounts converted (e.g., $22,312.30 on Aug. 19; $31,127.52 on Sept. 27) and the specific accounts from which they were taken. *See* Dkt. 25 (Complaint) ¶ 92. These are not general debts; they are specific funds wrongfully seized from Plaintiffs' accounts. *See Intermarkets U.S.A., Inc. v. C-E Natco*, 749 S.W.2d 603, 604 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (conversion lies where party breaches obligation to deliver specific, identifiable sum).

### 2.  *Wrongful Dominion vs. Authorization*

Chase argues it was "authorized" to take the funds by Corona. [Dkt. 35 at 13, 18]. This is a factual defense that goes to the merits, not the pleadings. The elements of conversion are: (1) the plaintiff owned or had possession of the property; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) demand; and (4) refusal. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

Plaintiffs alleged they owned the funds in their *personal* and *Prime Title* accounts. Dkt. 25 (Complaint) ¶ 92. They alleged Chase had *no* authority to seize funds from these accounts to

satisfy Dash Title's alleged debts, particularly based on instructions from a third party (Corona) who had no authority over Prime Title or Ms. Henshilwood's personal assets. *Id.* ¶ 96.

### 3. The Economic Loss Rule Does Not Bar Independent Torts

Chase argues the ELR bars the conversion claim. However, the ELR does not bar tort claims where the defendant's conduct constitutes an independent tort. *Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 126–29 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Here, the duty not to convert—i.e., steal—property is a common law duty independent of any bank account agreement. Chase had no contractual right under the Dash Title agreement to seize funds from *Prime Title* (a separate entity) or Ms. Henshilwood's personal accounts. *See Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (stating the economic loss rule does not apply if Defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties."). Because Plaintiffs allege wrongful conduct independent of the contract—specifically, the seizure of funds from non-contractual accounts and not simply arising from duties created by the contracts—the conversion claim is viable.

## H. Plaintiffs Are "Consumers" Under the DTPA and Pled Actionable Misrepresentations

Chase moves to dismiss the DTPA claim (Count IV), arguing that Plaintiffs are not "consumers" because the dispute involves credit card transactions and that the claim is merely a breach of contract. [Dkt. 35 at 14-18]. These arguments are legally unsound and factually premature.

### 1. Plaintiffs Are Consumers of Banking Services

To qualify as a "consumer" under the DTPA, a plaintiff must seek or acquire goods or services by purchase or lease, and those goods or services must form the basis of the complaint. Tex. Bus. & Com. Code § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). It is well-settled Texas law that banking services—such as the processing of checks, wire transfers, and account security—are "services" under the DTPA. *La Sara Grain Co. v. First*

*Nat'l Bank of Mercedes*, 673 S.W.2d 558, 564 (Tex. 1984) (holding that services provided by a bank in connection with a checking account are within the scope of the DTPA);

Plaintiffs pled that they sought and acquired banking services from Chase, specifically referencing the "Chase Private Client" services which promised enhanced security and support. Dkt. 25 (Complaint) ¶¶ 74-75. Chase's reliance on *Cushman v. GC Servs., LP* is misplaced. *Cushman* involved a debt collection dispute where the plaintiff sought only the extension of credit, which is not a "good" or "service." *See* 657 F. Supp. 2d 834, 843 (S.D. Tex. 2009). Here, **Plaintiffs are not complaining about the extension of credit; they are complaining about the *services* associated with their deposit accounts**—specifically, Chase's failure to verify authority and its improper debiting of funds. Where services are an <u>objective</u> of the transaction, consumer status exists. *Maginn v. Norwest Mortg., Inc.*, 919 S.W.2d 164, 167-68 (Tex. App.—Austin 1996, no writ).

### 2. *Actionable Misrepresentations and Laundry List Violations*

Chase argues the alleged misrepresentations are mere "puffery" or breach of contract. Under Texas law, the DTPA prohibits false, misleading, or deceptive acts, including misrepresenting the characteristics, uses, or benefits of services. Tex. Bus. & Com. Code § 17.46(b)(5), (7). Misrepresentations regarding the nature of the services provided—such as security protocols or verification procedures—are actionable. *See Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462-63, 466 (Tex. App.—Dallas 1990, writ denied) (rejecting categorical "puffery" defense under DTPA).

Plaintiffs alleged Chase represented it would provide specific security and verification services (e.g., "enhanced security") but failed to do so, instead allowing an unauthorized third party to seize control. Dkt. 25 (Complaint) ¶ 75. This is not a mere failure to perform a future promise (breach of contract); it is a misrepresentation of the *characteristics* and *quality* of the services sold. *See Smith v. Baldwin*, 611 S.W.2d 611, 614, n. 4 (Tex. 1980) (DTPA provides remedies cumulative to contract).

20

### 3. Unconscionable Conduct

Plaintiffs also pled unconscionable action under § 17.50(a)(3), which requires a showing that the defendant took advantage of the consumer's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Tex. Bus. & Com. Code § 17.45(5). Unlike fraud, unconscionability is an objective standard and does not require proof of intent or scienter. *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998). Plaintiffs alleged Chase took advantage of them by freezing their accounts without notice and seizing personal funds based on facially invalid documentation, leaving them unable to meet tax obligations. This gross disparity in power and the unfairness of the result support a claim for unconscionability.

## I.    UCC Article 4A Prohibits Chase's Reversal of the Completed Wire Transfer

Chase argues that Plaintiffs failed to plead a plausible right to recover under UCC Article 4A (Tex. Bus. & Com. Code Ch. 4A) regarding the $22,312.30 wire transfer, claiming it was authorized by Corona and that Article 4A preempts other claims. [Dkt. 35 at 18-19]. This argument fails because it ignores the statutory finality of funds transfers.

### 1. Finality of Completed Transfers

Under Article 4A, a funds transfer is **completed** when the beneficiary's bank accepts the payment order. Tex. Bus. & Com. Code § 4A.104(1). Once the beneficiary's bank accepts the order (e.g., by crediting the beneficiary's account), the transfer is final, and the beneficiary's bank generally cannot reverse it. *Id.* § 4A.405(c).

Plaintiffs pled that the wire to Wells Fargo was initiated on August 19, 2024, and was **completed and credited** to the beneficiary. Dkt. 25 (Complaint) ¶ 41. Chase subsequently reversed this completed transfer on August 21, 2024. Under Section 4A.211(c), a payment order cannot be cancelled or amended *after* acceptance unless the receiving bank agrees *and* specific statutory conditions (such as a duplicate payment or wrong beneficiary) are met. *See*

Tex. Bus. & Com. Code § 4A.211(c). A change of heart by a third party (Corona) or an internal corporate dispute is *not* a valid statutory ground for reversing a completed wire.

### 2. *Liability for Unauthorized Orders*

Chase argues it relied on Corona. However, under Section 4A.202, a payment order is effective as the order of the customer only if it was authorized or verified pursuant to a **commercially reasonable security procedure**. Tex. Bus. & Com. Code § 4A.202(b). If a bank accepts an unauthorized order (or an unauthorized reversal order) without following such procedures, it bears the loss. *Id.* § 4A.204(a) (bank must refund payment and pay interest).

Plaintiffs pled that the reversal was unauthorized and that Chase failed to follow commercially reasonable security procedures (e.g., verifying the instruction with the long-standing owners). Dkt. 25 (Complaint) ¶¶ 27, 56, 84–86. Whether Chase's reliance on Corona was commercially reasonable is a fact question, particularly given Plaintiffs' allegations of conflicting instructions and invalid/insufficient documentation. *See Am. Title Ins. Co. v. Shawmut Bank of R.I., N.A.*, 812 F.Supp.301, 307 (D.R.I. 1993) ("[T]he question of whether a bank acted with commercial reasonableness is ordinarily a question of fact . . . . [T]he fact that a particular practice is common among banks does not establish that it is commercially reasonable.") (citations omitted); *see also* U.C.C. § 4A-203 cmt. 4, para. 2 ("Whether the receiving bank complied with the [security] procedure is a question of fact.").

### 3. *Preemption is Limited*

Chase argues Article 4A preempts all other claims. While Article 4A preempts inconsistent common law claims regarding funds transfers, it does not preempt claims where the bank's conduct falls outside the scope of the statute or involves independent wrongs. *Moody Nat'l Bank v. Texas City Dev. Ltd.*, 46 S.W.3d 373, 377-78 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Article 4A has never been interpreted to preempt all common law claims; it is intended only to bar those claims that would be inconsistent with any of the

article's provisions."). Plaintiffs have pled their Article 4A claim in the alternative, which is permitted by Rule 8(d).

**J.    Mental Anguish Damages Are Recoverable for DTPA Violations and Gross Negligence**

Chase seeks to dismiss Plaintiffs' claim for mental anguish damages, citing general rules against such damages in contract cases. [Dkt. 35 at 19]. However, Plaintiffs seek mental anguish damages only for **DTPA violations** and **Gross Negligence**, where such recovery is expressly permitted by Texas law.

- **DTPA:** A consumer may recover mental anguish damages if the trier of fact finds the defendant's conduct was committed "knowingly." Tex. Bus. & Com. Code § 17.50(b)(1). Plaintiffs have pled that Chase's conduct was knowing and intentional. Dkt. 25 (Complaint) ¶ 78. *See also Norwest Mortg., Inc. v. Salinas*, 999 S.W.2d 846, 862 (Tex. App.—Corpus Christi 1999, pet. denied) (affirming mental anguish award for knowing DTPA violation).

- **Gross Negligence:** Texas law authorizes mental anguish damages in negligence cases where the defendant's conduct rises to the level of gross negligence. *City of Tyler v. Likes*, 962 S.W.2d 489, 497,498 n.1  (Tex. 1997).

Chase argues Plaintiffs failed to plead sufficient facts. However, Plaintiffs alleged severe emotional distress, anxiety, sleeplessness, and humiliation resulting from the sudden financial devastation caused by Chase's seizure of their personal funds. Dkt. 25 (Complaint) ¶ 100. These allegations meet the standard set in *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995), by describing a "high degree of mental pain and distress" beyond mere worry. Specific evidentiary proof is a matter for trial, not dismissal.

**K.    Abatement is Improper Because the State Court Action Involves Different Parties and Issues**

Chase requests that this Court abate the case pending a state court lawsuit between Plaintiffs and Corona. [Dkt. 35 at 20-21]. Abatement is a discretionary doctrine, and federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colo. River Water Conservation Dist.*, 424 U.S. at 817. Abstention is an "extraordinary and narrow exception." *Id.* at 813.

The factors weighing against abatement here are decisive:

- **Lack of Parallel Proceedings:** The state court action involves a corporate ownership dispute between Henshilwood/Jones and Corona. **Chase is not a party** to that lawsuit.

- **Different Issues:** This federal case concerns Chase's independent liability for violating federal (EFTA) and state (UCC, DTPA) banking laws. Resolving who owns Dash Title will not determine whether Chase failed to follow its own security procedures, failed to provide required notices under the EFTA, or wrongfully seized funds from *personal* accounts that Dash Title (regardless of owner) had no right to access.

- **Prejudice:** Abatement would indefinitely delay Plaintiffs' ability to recover the personal funds Chase seized, causing ongoing financial hardship.

Because the state court cannot provide a comprehensive remedy for Chase's specific statutory violations, abatement would violate the principle that federal courts must exercise their jurisdiction. *See Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6, 20, 26 (E.D.N.Y. 2014) (denying abstention where state case would not resolve all federal claims).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs Natalie Henshilwood, Shawn Jones, and Prime Title Agency, Inc. respectfully request that the Court **DENY** Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss in its entirety.

Plaintiffs have satisfied the notice pleading requirements of Federal Rule of Civil Procedure 8(a) by alleging sufficient factual matter to state plausible claims for relief. Specifically:

- Plaintiffs have pled a valid **Breach of Contract** claim based on Chase's violation of its duties of ordinary care and verification under the Account Agreements and Texas law;

- Plaintiffs have standing to sue for direct injuries to their **personal and separate business accounts**;

- Plaintiffs have stated viable claims under the **Electronic Fund Transfer Act (EFTA)** for unauthorized electronic debits from consumer accounts;

- The **Economic Loss Rule** does not bar Plaintiffs' tort and statutory claims because they arise from independent duties imposed by the Texas UCC, the DTPA, and common law prohibitions against conversion and fraud;

24

- Plaintiffs have pled specific facts supporting **Gross Negligence**, **Conversion**, and **DTPA** violations based on Chase's conscious indifference, wrongful seizure of specific funds, and deceptive trade practices;

- Plaintiffs have stated a claim under **UCC Article 4A** for the improper reversal of a completed wire transfer; and

- **Abatement** is unwarranted because the state court litigation involves different parties and distinct issues that will not resolve Chase's independent liability under federal and state banking laws.

Alternatively, if the Court determines that the Second Amended Complaint is deficient in any respect, Plaintiffs respectfully request leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), as justice so requires.

Dated: November 24, 2025

Respectfully submitted,

**HENDERSHOT COWART, PC**

*/s/ Philip D. Racusin*
SIMON W. HENDERSHOT, III
SBN: 09417200
trey@hchlawyers.com
PHILIP D. RACUSIN
SBN: 24054267
pracusin@hchlawyers.com
1800 Bering Drive, Suite 600
Houston, Texas 77057
T: 713-783-3110
F: 713-783-2809

**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on November 24, 2025, a true and correct copy of the foregoing instrument was served via the Court's CM/ECF system, and that all counsel of record were served an electronic copy pursuant to the Federal Rules of Civil Procedure.

*/s/ Philip D. Racusin*
PHILIP D. RACUSIN

4929-1285-2604, v. 3