## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| NATALIE HENSHILWOOD, SHAWN JONES, and PRIME TITLE AGENCY, INC., | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO: 4:25-cv-01926 |
| JPMORGAN CHASE BANK NATIONAL ASSOCIATION, | § § § | |
| *Defendant*. | § § | |

---

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

---

Respectfully submitted,

  */s/ Jennifer Tomsen*
Jennifer Tomsen
Texas Bar No. 24064535
tomsenj@gtlaw.com
Stephen Edmundson
Texas Bar No. 00796507
edmundsons@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: 713.374.3500
Facsimile: 713.374.3505

**ATTORNEYS FOR DEFENDANT,
JPMORGAN CHASE BANK, N.A.**

## TABLE OF CONTENTS

I. OVERVIEW OF REPLY .............................................................................................. 1

II. CENTRAL DOCUMENTS NEGATE PLAINTIFFS' CORE ASSERTIONS ................. 1

III. REPLY TO SPECIFIC ARGUMENTS IN PLAINTIFFS' RESPONSE ......................... 4

    A.    Plaintiffs still have not complied with minimum pleading standards. .......... 4

        1.    Plaintiffs have not satisfied the fair notice standard. ........................ 4

        2.    Plaintiffs' alternative pleading does not address their lack of standing to sue for duties that would be owed to Dash. .................... 5

        3.    Alleged notice dates are an essential element of certain claims; failure to plead them is fatal. ................................................. 5

        4.    Further re-pleading is not warranted. ................................................. 6

    B.    Plaintiffs have not stated a breach of contract claim upon which relief could be granted. ................................................................................... 6

    C.    Plaintiffs' claims implicate duties to Dash, but Plaintiffs have not sued as or for Dash, nor have they been injured by return of funds to Dash.  8

    D.    Plaintiffs have not alleged a viable claim under the EFTA. ........................ 9

    E.    The economic loss rule bars Plaintiffs' non-contract claims. .................... 11

        1.    The economic loss rule bars Plaintiffs' negligence and gross negligence claims. ............................................................................ 11

        2.    The economic loss rule bars Plaintiffs' conversion claims. ............. 12

        3.    The economic loss rule bars Plaintiffs' DTPA claims. ................... 13

        4.    Plaintiffs' theoretical and conclusory argument for alleged independent statutory duties and exceptions to the economic loss rule ignores the nature of the complaint. .................................. 14

        5.    Plaintiffs have not pleaded fraud or an intentional tort that takes their case outside of the economic loss rule .......................... 15

    F.    Plaintiffs' claim for conversion must be dismissed. .................................. 15

    G.    Plaintiffs' DTPA claim must be dismissed. .............................................. 16

    H.    Plaintiffs' UCC Article 4A claim must be dismissed. .............................. 18

    I.    Plaintiffs' gross negligence and exemplary damages claims must be dismissed. ................................................................................................... 19

    J.    Plaintiffs' mental anguish claim must be dismissed. ................................. 19

    K.    Alternatively, the Court has discretion to abate this matter. ...................... 20

IV. CONCLUSION ....................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Curtis v. Cerner Corp.*,
 621 B.R. 141 (S.D. Tex. 2020) .................................................................. 16

*Cushman v. GC Servs., LP*,
 657 F. Supp. 2d 834 (S.D. Tex. 2009), *aff'd sub nom. Cushman v. GC Servs., L.P.*, 397 F. App'x. 24 (5th Cir. 2010) ............................................ 17

*Dorsey v. U.S. Bank Nat'l Assn*,
 2012 WL 13001917 (M.D. La. April 2, 2012) ............................................ 5

*Grainmarket, LLC v. PNC Bank*,
 No. 3:22-CV-2419-X, 2023 WL 4162278 (N.D. Tex. June 23, 2023) ...................... 10

*Jon–T Chems., Inc. v. Freeport Chem. Co.*,
 704 F.2d 1412 (5th Cir. 1983) .................................................................. 14

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
 365 F.3d 353 (5th Cir. 2004) .................................................................... 16

**State Cases**

*Autohaus, Inc. v. Aguilar*,
 794 S.W.2d 459 (Tex. App.—Dallas 1990) (reh. den.) ............................... 17

*Canfield v. Bank One*,
 51 S.W.3d 828 (Tex. App.—Texarkana 2001, pet. denied) .................... 13, 17

*CExchange, LLC v. Top Wireless Wholesaler*,
 No. 05-17-01318-CV, 2019 WL 3986299 (Tex. App.— Dallas Aug. 23, 2019, pet. denied) ................................................................................ 13, 14

*DeWitt County Elec. Co-op., Inc. v. Parks*,
 1 S.W.3d 96 (Tex. 1999) .......................................................................... 12

*Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*,
 192 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ........... 12

*Hallmark v. Hand*,
 885 S.W.2d 471 (Tex. App.—El Paso 1994, writ denied) ......................... 20

*Herzing v. Metro. Life Ins. Co.*,
   907 S.W.2d 574 (Tex. App.—Corpus Christi 1995, writ denied) ................................. 9

*Jim Walters Homes, Inc.*,
   711 S.W.2d 617 618 (Tex. 1986) ................................................................. 11

*Lenape Res. Corp. v. Tenn. Gas Pipeline*,
   925 S.W.2d 565 (Tex. 1996) ...................................................................... 14

*Parkway Co. v. Woodruff*,
   901 S.W.2d 434 (Tex. 1995) ...................................................................... 20

*Southwestern Bell Tel. Co. v. DeLanney*,
   809 S.W.2d 493 (Tex. 1991) ...................................................................... 11

*Sterling Chems. Inc.*,
   259 S.W.3d 793 (Tex. App.-Houston [1st Dist.] 2007, pet. denied) ........................ 11

*World Help v. Leisure Lifestyles, Inc.*,
   977 S.W.2d 662 (Tex. App.—Fort Worth 1998, pet. denied) .................................. 14

*Wright v. CAE SimuFlite, Inc.*,
   No. 05-07-00759-CV, 2008 WL 2841165 (Tex. App.—Dallas July 24,
   2008, no pet.) (mem. op.) ......................................................................... 14

**Federal Statutes**

15 U.S.C. § 1693 ............................................................................................... 5

15 U.S.C. § 1693a(7)(D) .................................................................................. 10

15 U.S.C. § 1693a(12) ..................................................................................... 9

**State Statutes**

Tex. Bus. & Com. Code Ann. § 1.102 Comment 2 ............................................... 14

Tex. Bus. & Com. Code Ann. § 1.302(a) (Vernon Supp. 2008) ............................. 14

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................ 16

Fed. R. Civ. P. 15(a) ....................................................................................... 6

Fed. R. Civ. P. 15(a)(1) ................................................................................... 6

iii

## I. <u>OVERVIEW OF REPLY</u>

This is a banking case. Plaintiffs complain of Chase's conduct in handling their accounts. The relationship is governed by Chase's account agreements. The Court can consider the agreements and other central documents referenced in Plaintiffs' Complaint when determining whether Plaintiffs state a claim upon which relief could be granted.[1] Because the central documents negate the core contentions on which Plaintiffs base their claims, Plaintiffs do not state any claims upon which relief can be granted—even after re-pleading multiple times. As further bases for dismissal, the economic loss rule bars Plaintiffs non-contract claims, Plaintiffs allege duties owed to Dash but do not sue as Dash (*i.e.*, no standing), and Plaintiffs have failed, comprehensively, to satisfy the applicable legal standards for their various causes of action.

## II. <u>CENTRAL DOCUMENTS NEGATE PLAINTIFFS' CORE ASSERTIONS</u>

Plaintiffs' claims depend upon demonstrably false contentions that are contrary to and negated by the central documents Plaintiffs referenced in their Complaint. Plaintiffs contend:

- "Chase disregarded its own account agreements, banking regulations, and industry standards by accepting the unsubstantiated claims of a third party, Veronica Corona, to be the sole owner of Dash Title Corp.;"

- "Chase accepted a non-binding, expired "term sheet" as proof of ownership, ignoring the lack of required corporate resolutions or stock transfer agreements;" and

---

[1] See authorities cited in Dkt. 35 (Chase's Motion) at 10. For clarity and ease of reference, page citations to prior filings in this matter refer to the page of the document as saved in the Court's Electronic Case Filing System, not to the "page number" of the Motion or Response. So, for example, "p. 4" of Chase's Motion is cited as Dkt. 35 at 15, because it is electronically marked in PACER as Document 35, page 15 of 33.

- "Based on this insufficient documentation, Chase removed Plaintiffs as authorized signers without notice, reversed completed wire transfers days after they were final, and clawed back funds from Plaintiffs' personal accounts and separate business accounts to satisfy alleged debts of Dash Title Corp."

[Dkt. 26 at 9].

Because the central documents negate these core elements of Plaintiffs' case, Plaintiffs do not state claims upon which relief could be granted.

First, the corporate resolution is not an "unsubstantiated claim[] of a third party." *Plaintiff Natalie Henshilwood signed it.* [Dkt. 35-5]. Chase's Deposit Account Agreement (DAA) provides that Chase "may rely on the accuracy and completeness of all resolutions, signature cards and other documents you deliver to us in connection with the account." [Dkt. 35-3 at 7, Section II.B.]. Thus, Chase did not disregard its own account agreements by relying on the resolution, and Plaintiffs have not identified any other alleged "banking regulations, and industry standards" that would salvage their allegation that Chase breached a duty by relying on the resolution.

Second, Plaintiffs' argument that Chase accepted a non-binding, expired "term sheet" as proof of ownership, ignoring the "lack of required corporate resolutions or stock transfer agreements," is negated by the corporate resolution. The resolution's only reference to the term sheet is to its statement that it lists the debts that Corona has agreed to accept ("Natalie Henshilwood has agreed that Veronica Corona will accept the debt of Dash Title Corp as itemized in the term sheet as lawful consideration."). [Dkt. 35-5 at 2]. Nothing in the resolution regarding Corona's appointment as President and sole owner is stated as contingent or incomplete. To the contrary, the resolution states not once, but

2

twice, that Henshilwood agrees that Corona is "hereby" the President and sole owner of Dash. *Id*. Chase was authorized to "rely on the accuracy and completeness" of the resolution." [Dkt. 35-3 at 7, Section II.B.]. There is no basis for Plaintiffs' contention that Chase needed to further investigate the term sheet, stock transfer agreements, or anything else to confirm its accuracy and completeness.

Third, the central documents negate Plaintiffs' core allegations that Chase removed Plaintiffs as authorized signers based on "insufficient documentation" and that Plaintiffs were owed notice that they had been removed as signers. In addition to the corporate resolution, Chase was authorized to rely on the accuracy and completeness of signature cards and other documents that Dash delivered to Chase in connection with the account. [Dkt. 35-3 at 7, Section II.B.]. On August 15, 2024, Dash removed Plaintiffs as authorized persons on Dash's accounts. [Dkt. 35-6 at 2]. The Business Depository Certificate expressly states that the President may do this "acting alone." [Dkt. 35-6 at 2]. Plaintiffs have not identified any basis for their contention that they were entitled to notice that Dash, through its President, had removed them as Authorized Persons. Indeed, Plaintiffs knew the President had this authority, acting alone, from also having signed a Business Depository Certificate in the past. [Dkt. 35-1 at 2]. Despite signing the resolution confirming Corona as Dash's sole owner and President, Plaintiffs made a series of transfers from Dash's accounts to their own after August 15, 2024. The DAA authorized Chase to reverse transactions and make chargebacks when Dash complained that a payment was unauthorized; this included express authority to subtract funds from Plaintiffs' accounts or in other accounts for which they were owners. [Dkt. 35-3 at 9, Sections III.A.4 and 5]. The

3

"other accounts" owned by Plaintiffs include the Prime Title business account [Dkt. 25 at ¶ 56(d)]. Thus, Plaintiffs' third core contention is negated.

Finally, Plaintiffs claim that they were injured in various ways as a consequence of Chase's aforementioned conduct [Dkt. 25-15 at ¶70 (claiming mental anguish, damaged credit, lost business opportunities, unpaid taxes, increased borrowing costs)], but the DAA expressly negates any such claim:

**WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

[Dkt. 35-3 at 23, Sections IX.B. (emphasis in original)].

Because each of Plaintiffs' causes of action depends on core allegations that are negated by the central documents, Plaintiffs do not state any claim upon which relief could be granted.

### III.  REPLY TO SPECIFIC ARGUMENTS IN PLAINTIFFS' RESPONSE

The remainder of this Reply addresses each of the arguments raised in Plaintiffs' Response.

### A.  <u>Plaintiffs still have not complied with minimum pleading standards</u>.

#### 1.  *Plaintiffs have not satisfied the fair notice standard.*

Rather than addressing the substance of Chase's bases for dismissal (*i.e.*, failure to identify provisions breached, failure to allege facts that would support a viable claim) [*see* Dkt. 35 at 15-16], Plaintiffs cite general authority regarding the "fair notice" standard and

assert, in conclusory fashion, that they satisfied it. As noted in the previous section, they have <u>not</u> given fair notice of a claim upon which relief could be granted and often make vague allusions to alleged duties that are not supported by the contract or otherwise. [Dkt. 36 at 13-14]. Chase stands on the briefing in its Motion. [Dkt. 35 at 15-16].

> **2.    *Plaintiffs' alternative pleading does not address their lack of standing to sue for duties that would be owed to Dash.***

Similarly, Plaintiffs cite general authority for the concept of pleading in the alternative, but they do not adequately address how they have standing to sue for alleged duties owed to Dash *when they have not sued as Dash*; nor do they adequately address how they could plausibly be harmed by return of funds to Dash, given their contention that they still own Dash.  Chase stands on its prior briefing on the issue. [Dkt. 35 at 18-19].

> **3.    *Alleged notice dates are an essential element of certain claims; failure to plead them is fatal.***

Plaintiffs are incorrect that their failure to allege dates that they allegedly gave notice and demanded correction from Chase is an "affirmative defense" [*See* Dkt. 36 at 15], and Plaintiffs have not cited a single case supporting this faulty assertion. The nature of the claims is that Chase had a specified time to investigate and respond, but failed to do so. An essential fact to stating a viable claim is alleging the date of notice that allegedly started the clock running. *See, e.g.*, *Dorsey v. U.S. Bank Nat'l Assn*, 2012 WL 13001917, *3 (M.D. La. April 2, 2012) (dismissing EFTA claim because "[t]he date of Plaintiff's notification is essential to prove that U.S. Bank had an obligation to follow the error-resolution procedure under 15 U.S.C. § 1693 and that the Bank violated its responsibilities under this provision. Moreover, Plaintiff has not alleged any facts in the complaint to

satisfy the statutory 'extenuating circumstances' exception to the sixty-day notice requirement. Without these key facts, Plaintiff's complaint cannot sustain a plausible claim for relief against U.S. Bank for violating EFTA"). Similarly, here, Plaintiffs' failure to plead dates of notice is fatal. Chase stands on its prior briefing. [Dkt. 35 at 20-21, 31].

### 4.    *Further re-pleading is not warranted.*

Finally, Plaintiffs contend that the proper remedy, if they have not adequately pleaded, is to let them plead again. [*See* Dkt. 36 at 15-16]. The Court has already done so. [*See* Dkt. 21; 30]. Plaintiffs have re-pleaded twice and still do not state claims upon which relief could be granted. Indeed, their case theory is negated by the central documents. The very first sentence of Rule 15(a) provides a relevant limitation, setting out that "[a] party may amend its pleading ***once*** as a matter of course." FED. R. CIV. P. 15(a)(1). Plaintiffs have already amended ***twice*** in response to issues that Chase raised through the pre-motion letter and conference process. [*See* Dkt. 13, 21, 23, 25]. More than four months ago, Chase clearly identified the deficiencies in Plaintiffs' Complaint. [Dkt. 13]. Any further request for leave should be denied.

### B.    **Plaintiffs have not stated a breach of contract claim upon which relief could be granted.**

As explained above, Plaintiffs have pleaded allegations that the central documents negate (allegedly reversing transactions without proper authorization; allegedly needing to look beyond the corporate resolution; allegedly needing to notify Plaintiffs that Dash removed them as Authorized Persons on its accounts; allegedly reversing transactions without authority).

To maintain a claim for breach of contract, Plaintiffs must identify the contract and allege which terms were breached. [See authorities cited at Dkt. 35 at 15]. Plaintiffs cite only two specific DAA provisions, and do not allege how either of those sections was breached. [*See* Dkt. 35 at 15-16]. They do not cite provisions supporting any of the other duties that they allege (*e.g.*, alleged duty to look beyond the signed corporate resolution; alleged duty to notify Plaintiffs that Dash removed them as Authorized Persons on its accounts) or conduct breaching any obligation owed by Chase.

Meanwhile, the central documents negate Plaintiffs' claims. *See* Section II, *supra*. Chase could rely on the corporate resolution, follow Dash's President's instructions—including her instructions, acting alone, to remove Plaintiffs as signers—and could reverse transactions and make chargebacks from Plaintiffs' accounts when, as here, they made withdrawals that Dash did not authorize.

Plaintiffs' breach of contract claim should be dismissed not only because Plaintiffs fail to specify contract provisions and conduct to plead a viable claim, but also because the attached contracts and central documents negate Plaintiffs' allegations. Plaintiffs' efforts to avoid dismissal by loosely alleging lack of good faith or failure to exercise ordinary care, without explaining how Chase allegedly strayed from any contractual obligations, does not state a viable claim; otherwise no contract claim would ever be dismissed. To the extent that Plaintiffs accuse Chase of accepting "facially insufficient documentation to remove long-standing owners," [Dkt. 26 at 18] that is not a plausible reading of the actual language in the corporate resolution and the DAA. The contract that Plaintiffs agreed to here defines the standard by which the "ordinary care" responsibility is measured. *Id*. § 4.103(a). The

contract provides that it is <u>not</u> a breach of ordinary care for Chase to "rely on the accuracy and completeness of all resolutions, signature cards, and other documents" that Dash delivered in connection with the account. The Court would have to re-write the DAA to find that Chase was obligated to do more. The DAA, the corporate resolution, Dash's Business Depository Certificate, and Dash's Signature Card reflect Chase's authority, and Plaintiffs have not alleged any plausible facts or law that would allow them to recover on a breach of contract claim.

**C.** **<u>Plaintiffs' claims implicate duties to Dash, but Plaintiffs have not sued as or for Dash, nor have they been injured by return of funds to Dash.</u>**

Plaintiffs attempt to twist Chase's standing argument. (*Compare* Dkt. 35 at 18-19 with Dkt. 36 at 18-20). Chase raised standing in its Motion because the alleged duties Plaintiffs claim Chase breached—*i.e.*, to do more to verify the accuracy of the corporate resolution before following Corona's instructions, and to notify Plaintiffs when Corona removed them as Authorized Persons from Dash's accounts—relate to Dash, not to Plaintiffs individually.

Plaintiffs ignore that sections III.A.4 and 5 of the DAA expressly allow Chase to refuse deposits, reverse transactions, and make chargebacks when, among other things, the issuer (here, Dash) complains that a payment was unauthorized; nor do Plaintiffs mention that Chase's express authority includes subtracting funds "from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds" (emphasis added). [Dkt. 35 at 5 and 35-3 at 9]. The

"other accounts" owned by Plaintiffs include the Prime Title business account [Dkt. 25 at ¶ 56(d)].

Plaintiffs attempt to characterize the claim as one of damage to themselves, but even their own cited authority reflects that any such claim must be "independent of any duty to the corporation." [Dkt. 36 at 19 (citing *Herzing v. Metro. Life Ins. Co.*, 907 S.W.2d 574, 584 (Tex. App.—Corpus Christi 1995, writ denied)]. In essence, they argue that, once they removed the funds from Dash's accounts to their own (despite not being Authorized Persons), the funds were suddenly independent of any duty that Chase owed to Dash. The DAA, which allowed Chase to reverse unauthorized transactions, including by recourse to Plaintiffs' other accounts, reflects that Dash's rights are squarely at issue, and it negates Plaintiffs' assertion that they have claims independent of any duty Chase owed to Dash. Indeed, the gravamen of their complaint is that Chase owed further corporate vetting duties to Dash and should have maintained Plaintiffs as Authorized Persons to transfer funds from Dash's accounts.

**D.**    <u>**Plaintiffs have not alleged a viable claim under the EFTA**</u>.

As noted in Chase's Motion [Dkt. 35 at 19], an unauthorized funds transfer under the EFTA is a transfer "from a consumer's account initiated by a person other than the consumer **without actual authority** to initiate such transfer **and from which the consumer receives no benefit**." 15 U.S.C. § 1693a(12) (emphasis added). The EFTA expressly <u>excludes</u> from its definition of electronic fund transfer "any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining

an agreed upon minimum balance in the consumer's demand deposit account." 15 U.S.C. § 1693a(7)(D) (emphasis added).

As noted repeatedly in Chase's Motion and this Reply, per sections III.A.4 and 5 of the DAA, Chase was authorized to reverse transactions and make chargebacks when, among other things, the issuer (here, Dash) complains that a payment was unauthorized, and Chase's express authority includes subtracting funds "from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds" (emphasis added). The DAA and the central documents show that Chase was authorized to do what it is alleged to have done. Any claim that the transfers were unauthorized is negated.

Also, per Plaintiffs' own pleadings, the funds were returned to Dash, and Plaintiffs claim to be part owners; thus Plaintiffs, having benefitted from the transfers, have no claim. Plaintiffs' response is that Plaintiffs explicitly pled that they suffered harm—including bounced payments to the IRS—and did not authorize the reversals. [Dkt. 56 at 21]. The central documents, discussed above, negate Plaintiffs' authorization argument, and the DAA expressly excludes consequential damages.

Chase notes, further, that Plaintiffs allege their EFTA claims as "Plaintiffs," collectively, and do not expressly exclude Prime Title. [Dkt. 25 at 21-22, ¶¶ 59-62]. Business entities cannot claim EFTA protection. *See, e.g.*, *Grainmarket, LLC v. PNC Bank*, No. 3:22-CV-2419-X, 2023 WL 4162278 (N.D. Tex. June 23, 2023) (dismissing business's EFTA claim because the entity was not a consumer and the bank account was established for business purposes). To the extent that any transaction involving Prime Title or its

accounts was intended to be part of "Plaintiffs'" EFTA claim, that claim should be dismissed.

Finally, Plaintiffs do not adequately plead when they gave notice of alleged EFTA claims (see also Section A(3) above). Plaintiffs' vague allegations—that they notified Chase "within two business days of discovering" the unauthorized transfers, specifically citing dates "including approximately September 27-29, 2024" [*see* Dkt. 25 (Complaint) ¶ 60(a)]—do not suffice. Chase stands on its prior briefing on this point. [Dkt. 35 at 21].

**E.    The economic loss rule bars Plaintiffs' non-contract claims.**

The economic loss rule bars Plaintiffs' negligence, gross negligence, conversion, and DTPA claims because Chase's handling of the accounts is governed by contract (Chase's DAA). In their response, Plaintiffs claim they allege duties imposed by law independent of the contract. [Dkt. 36 at 22-23].

*1.    The economic loss rule bars Plaintiffs' negligence and gross negligence claims.*

The economic loss rule bars tort claims when a contract forms the basis of a claim. *Jim Walters Homes, Inc.*, 711 S.W.2d 617 618 (Tex. 1986); *Sterling Chems. Inc.*, 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[I]f a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract he cannot maintain a tort action against a defendant"). When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494-5 (Tex. 1991). Further, when the contract spells out the parties' respective rights about a subject matter, the contract—not common

11

law tort theories—governs any dispute about the subject matter. *See DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 105 (Tex. 1999).

Plaintiffs' negligence and gross negligence claims center on funds transaction reversals and chargebacks, which implicate rights, duties, and obligations arising out of their account relationships with Chase, which is governed by the DAA. Accordingly, the negligence and gross negligence claims should be dismissed under the economic loss rule.

### 2.    *The economic loss rule bars Plaintiffs' conversion claims.*

Similarly, where a conversion claim relates to the subject of a contract and involves contractual duties, the economic loss rule bars the claim. *See, e.g., Exxon Mobil Corp. v. Kinder Morgan Operating L.P.*, 192 S.W.3d 120, 128 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that conversion claim related to the subject of the contract and involved duties detailed in the contract, and thus the claim sounded only in contract).

Here, Plaintiffs allege: "Chase converted funds from personal accounts and separate business accounts (Prime Title) to which Chase had no contractual right of setoff for Dash Title's debts. Seizing funds from a non-debtor third party (Prime Title) or a personal account without valid legal authority constitutes a wrongful act." [Dkt. 36 at 24]. However, the allegation expressly relates directly to the DAA, which gives Chase express authority to subtract "from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds" (emphasis added).  [Dkt. 35 at 5 and 35-3 at 9]. Thus, the economic loss rule bars this claim.

### 3.    The economic loss rule bars Plaintiffs' DTPA claims.

The essence of Plaintiffs' DTPA claim is that Chase misrepresented its security protocols and wrongfully reversed transactions where Plaintiffs had transferred Dash funds to Plaintiffs' accounts. These claims clearly implicate and do not arise separate from the parties' rights and duties under their contractual relationships. Allegations of breach of contract, even when pled as "misrepresentations," without more, do not constitute false, misleading, or deceptive acts under the DTPA. *Canfield v. Bank One*, 51 S.W.3d 828, 839 (Tex. App.—Texarkana 2001, pet. denied). "Nonperformance under a contractual obligation does not equate to misrepresentation under the DTPA. If so, then every breach of contract would be converted to a DTPA claim."  *Canfield*, 51 S.W.3d at 839. [*see also* additional authorities cited and discussion of why the economic loss rule bars Plaintiffs' DTPA claim in Dkt. 35 at 27-29]

Plaintiffs' reliance on *CExchange, LLC v. Top Wireless Wholesaler*, No. 05-17-01318-CV, 2019 WL 3986299, at *8 (Tex. App.— Dallas Aug. 23, 2019, pet. denied), is misplaced. There, one electronics reseller was told by Best Buy that 89% of a lot of "Beats" headphones had been graded by customers as defective, but that re-seller sold the lot to another re-seller after representing that they were "ungraded customer returns" and that "by past experience with this [seller]  the majority of the items are in working condition" and "will be in the original retail packaging." *Id*. at *1. In overruling an appellate point that sought reversal of a DTPA judgment because of the best evidence rule, the court distinguished that case from one where the economic loss rule did apply because the plaintiff's allegation that he received a different service than what he had been promised

could only be characterized as a breach of contract claim. *Id.* at *7 (distinguishing *Wright v. CAE SimuFlite, Inc.*, No. 05-07-00759-CV, 2008 WL 2841165, at *2 (Tex. App.—Dallas July 24, 2008, no pet.) (mem. op.). Here, Plaintiffs' claim is like the distinguished *Wright* claim:  It can only be characterized as a breach of contract allegation, because Plaintiffs claim they received different service than what they were promised.

### 4. *Plaintiffs' theoretical and conclusory argument for alleged independent statutory duties and exceptions to the economic loss rule ignores the nature of the complaint.*

Plaintiffs attempt to avoid the economic loss rule by arguing that they have alleged Chase violated duties outside of the DAA. Specifically, they allege that the statutory duties of ordinary care and good faith exist outside of the contract. [Dkt. 36 at 22]. While it is theoretically possible to have a duty of ordinary care and good faith outside of the contract, mere conclusory allegations that Chase violated those duties do not take the complained-of conduct outside of the contract. Here, what Plaintiffs are alleging Chase should have done (*i.e.*, investigate beyond the corporate resolution, not follow Dash's President's direction regarding who is authorized to remove Dash's funds, and not reverse unauthorized transactions) is not only *addressed* by the contract—Plaintiffs' allegations are *contrary* to what the contract says.[2]  So, even though *it is possible* to urge a claim based

---

[2] Like the common law, the UCC recognizes freedom of contract and specifies that parties may vary "the effect" of UCC provisions by agreement, except as proscribed by the Code. *See* Tex. Bus. & Com. Code Ann. § 1.302(a) (Vernon Supp. 2008); *see World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 679-80 (Tex. App.—Fort Worth 1998, pet. denied) (citing former Tex. Bus. & Com. Code Ann. § 1.102 cmt. 2 ("But an agreement can change the legal consequences (that) would otherwise flow from the provisions of the Act.")); *see also Jon–T Chems., Inc. v. Freeport Chem. Co.*, 704 F.2d 1412, 1416 (5th Cir. 1983) (holding that UCC provisions do not control over contractual provisions); *see also Lenape Res. Corp. v. Tenn. Gas Pipeline,* 925 S.W.2d 565, 570 (Tex. 1996) (same; referring to UCC Article 2 provisions as "gap-filler (that) may be varied by the parties' agreement").

on ordinary care and good faith in a contract case, Plaintiffs have not adequately pleaded any such independent duty and breach by Chase.

### 5.   *Plaintiffs have not pleaded fraud or an intentional tort that takes their case outside of the economic loss rule.*

As another effort at avoidance, Plaintiffs argue for fraud and intentional torts exceptions to the economic loss rule. Plaintiffs have not pleaded fraud. [Dkt. 25]. Moreover, Plaintiffs' conclusory allegation that Chase "engaged in knowing misconduct and conscious indifference (Gross Negligence) and acted on fraudulent representations by a third party without proper verification" [Dkt. 36 at 23] is merely an attempt to re-characterize Plaintiffs' complaints regarding Chase's handling of the account—subject to the DAA. Because the claims go directly to the contractual relationship, they are barred by the economic loss rule.[3]

## F.   <u>Plaintiffs' claim for conversion must be dismissed.</u>

In response to Chase's argument to dismiss their conversion claim, Plaintiffs contend that Chase' authorization to take Dash's funds back from Plaintiffs' accounts is a "factual defense," and Plaintiffs contend that Chase had "*no* authority to seize funds" from Plaintiffs' accounts.

Plaintiffs' allegation cannot sustain a claim because it is negated by the DAA, which they cite in their Complaint. As Chase noted in its Motion, sections III.A.4 and 5 of the DAA expressly allow Chase to refuse deposits, reverse transactions, and make chargebacks when, among other things, the issuer (here, Dash) complains that a payment was

---

[3] See also Dkt 35 at 21-24, further discussing the insufficiency of Plaintiffs' negligence and gross negligence claims, which reinforces that these claims truly sound in contract.

unauthorized and to subtract funds "from the balance in your account <u>or in other accounts</u> <u>for which you are an owner</u>, or charge part of the item to each, even if you have already withdrawn the funds" (emphasis added).  [Dkt. 35 at 5 and 35-3 at 9]. It is undisputed that Corona became Dash's new President [Dkt. 35-5 at 2] and, as the President could do—***acting alone*** [Dkt. 35-6]—she removed Plaintiffs as authorized persons on August 15, 2025 [Dkt. 35-6 and 35-7]. It is also not merely undisputed, but affirmatively pleaded by Plaintiffs, that Henshilwood removed the funds from Dash's accounts to the other accounts that they owned after August 15, 2025 [Dkt. 25, ¶¶ 41-44]. Because Plaintiffs' own pleadings and the central documents negate the claim, Plaintiffs do not state a conversion claim upon which relief could be granted.

Also, Plaintiffs are required to show that Chase "converted" and is wrongfully holding their funds; however, Plaintiffs allege that the disputed funds were credited back to Dash, in which Plaintiff Henshilwood alleges she has a significant ownership interest. [Dkt. 25, ¶¶ 41-43]. Accordingly, Chase is not holding and benefiting from the disputed funds.

Plaintiffs addressed none of these fatal defects in their Response. [*See also* discussion and authorities at Dkt 25 at 24-25]. Because Plaintiffs have not stated a viable claim for conversion, the claim should be dismissed.

**G.    <u>Plaintiffs' DTPA claim must be dismissed.</u>**

Plaintiffs must plead their DTPA claims with particularity under Rule 9(b). *Curtis v. Cerner Corp.*, 621 B.R. 141, 167 (S.D. Tex. 2020); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). However, Plaintiffs' Response does not

address the insufficient particularity in their DTPA allegations as to the "who, what, when, where, and how" of their claims. [*Compare* Dkt. 35 at 26-27 *with* Dkt. 36 at 27-28].

Plaintiffs contend that Chase has challenged their consumer status. [Dkt. 36 at 27]. However, Plaintiffs misrepresent Chase's argument. Chase merely challenged Plaintiffs' consumer status with regard to credit card transactions. [Dkt. 35 at 27]. Chase reiterates that the DTPA claim as it relates to any credit card transactions must also be dismissed, because credit card holders are not DTPA consumers. *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 843 (S.D. Tex. 2009), *aff'd sub nom. Cushman v. GC Servs., L.P.*, 397 F. App'x. 24 (5th Cir. 2010).

The essence of Plaintiffs' DTPA claims is that Chase wrongfully reversed transactions whereby Plaintiffs moved money from Dash accounts to their own. This necessarily implicates the parties' rights and duties under their contractual relationships. As noted in Chase's Motion, allegations of breach of contract, even when pled as "misrepresentations," without more, do not constitute false, misleading, or deceptive acts under the DTPA. *Canfield v. Bank One*, 51 S.W.3d 828, 839 (Tex. App.—Texarkana 2001, pet. denied). "Nonperformance under a contractual obligation does not equate to misrepresentation under the DTPA. If so, then every breach of contract would be converted to a DTPA claim." *Id*. at 839.

Also, as noted in Chase's Motion, the alleged misrepresentations that "Chase Private Client services included enhanced security and dedicated support" and that Chase had "premium banking services with dedicated banker support" are not representations of current fact but are nonspecific sales talk. Whereas Chase cited *Autohaus, Inc. v. Aguilar*,

17

794 S.W.2d 459, 461-62 (Tex. App.—Dallas 1990) (reh. den.), for the proposition that opinion and generalized sales "puffing" are defenses to alleged DTPA misrepresentations [Dkt. 35 at 27], Plaintiffs' Response cites the ***dissent*** in that case to wrongly contend that the puffery defense has been "categorically" rejected [Dkt. 26 at 28]. It has not.

Plaintiffs' "unconscionable conduct" allegation—that Chase took advantage of them by freezing their accounts without notice and seizing personal funds based on facially invalid documentation, leaving them unable to meet tax obligations—is negated by the DAA, which, in addition to authorizing Chase's actions, expressly excludes consequential damages. [Dkt. 35-3 at 23, ]

The central documents are specific and to the point. Chase was authorized to rely on Dash's corporate Resolution and the directions of Dash's President … and it did. Chase had a right to reverse unauthorized transactions and did so, returning the funds to Dash. Plaintiffs have not alleged that Chase made any representation indicating that it would have obligations not seen in the central documents.

**H.**     **Plaintiffs' UCC Article 4A claim must be dismissed**.

Plaintiffs admit that "a bank that executes an unauthorized funds transfer must refund the money to its customer," and here, the funds transfer(s) at issue were authorized by Corona on behalf of Dash. Chase was permitted to follow the instructions of Corona, an Authorized Person, and, as stated expressly section IX.B. of the DAA, Chase "will not be liable for anything we do when following (the) instructions" of an Authorized Person. [Dkt. 35-3 at 22]. Plaintiffs' Response is that whether Chase's reliance on Corona was commercially reasonable is a "fact question," given Plaintiffs' *allegations* of conflicting

instructions and invalid/insufficient documentation. [Dkt. 36 at 30]. However, as discussed above, the central documents refenced in Plaintiffs' Complaint negate these allegations. Per the DAA, Chase was to rely on the corporate resolution. It did so, and the new President—Corona—acting alone removed Plaintiffs' authority to transfer the funds. Per the DAA, Chase had authority to reverse transactions and make chargebacks when, among other things, the issuer (here, Dash) complained that a payment was unauthorized and to subtract funds "from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds." The central documents negate Plaintiffs' claim. [*See also* discussion and authorities at Dkt 25 at 29-30].

## I.    Plaintiffs' gross negligence and exemplary damages claims must be dismissed.

Plaintiffs have done little more than disagree with portions of Chase's Motion  to dismiss their gross negligence and exemplary damages claims and have not addressed significant portions of it (*e.g.*, that Corona was the proximate cause of any alleged damages and that Chase had a contractual right to rely on the corporate resolution and Dash's authorizations without notifying Plaintiffs that Dash had removed them as Authorized Persons). For reasons stated in Chase's Motion, Plaintiffs cannot prevail on their alleged gross negligence and exemplary damages claims. Chase stands on its prior briefing. [Dkt. 34 at 23-24].

## J.    Plaintiffs' mental anguish claim must be dismissed.

Plaintiffs' Response does not overcome the bases for dismissal stated in Chase's Motion in regard to Plaintiffs' claim for mental anguish damages. *See, e.g., Hallmark v.*

*Hand*, 885 S.W.2d 471, 481 (Tex. App.—El Paso 1994, writ denied) ("mental anguish damages are not recoverable in a cause of action for breach of contract nor in a tort action arising from a contractual breach"). Plaintiffs must plead more than aggravation or frustration. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995) ("An award for mental anguish must be supported by either (1) a substantial disruption in the plaintiff's daily routine, or (2) evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger"). Chase stands on its prior briefing. [Dkt. 35 at 30].

**K.    Alternatively, the Court has discretion to abate this matter.**

As stated in its Motion, Chase believes it is not necessary for the Court to determine "who owns Dash" to reach the conclusion that Plaintiffs did not plead sustainable claims in this matter. However, if the Court finds otherwise, that is exactly the issue in the state court matter. Moreover, the banking transactions at issue in that case overlap with the transactions complained of here. (*Compare* Doc 35-8 (state court pleadings) ¶ 2(a)-(f) to the Complaint, here [Dkt. 25 at ¶¶ 41-44]. If the Court finds that judicial economy would be served by abating this case pending resolution of Dash's ownership and entitlement to the funds involved in the complained-of transactions, it is well within this Court's discretion to do so.

### IV.  CONCLUSION

For at least the reasons set forth above, as well as in light of those set forth in Chase's Motion to Dismiss [Dkt. 35], Chase requests, respectfully, that the Court grant its Motion

to Dismiss, along with any and all other relief, at law or at equity, to which the Court may find Chase justly entitled.

Dated:  December 5, 2025              Respectfully submitted,

    _/s/ Jennifer Tomsen_

Jennifer Tomsen
Texas Bar No. 24064535
tomsenj@gtlaw.com
Stephen Edmundson
Texas Bar No. 00796507
edmundsons@gtlaw.com
GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: 713.374.3500
Facsimile: 713.374.3505

**ATTORNEYS FOR DEFENDANT
JPMORGAN CHASE BANK, N.A.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 5th day of December, 2025 a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system.

    _/s/  Jennifer Tomsen_

Jennifer Tomsen

21